**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANIEL COOK,

    Plaintiff,

vs.                                                     No. 10-cv-01173-JAP-WDS

THE HONORABLE THEODORE C. BACA,
individually and in his official capacity,
WELLS FARGO BANK, N.A, WELLS FARGO
& COMPANY, JAY D. HERTZ, ESQ. and
MICHELLE K. OSTRYE, ESQ, both individually
and as counsel for Wells Fargo Bank, N.A. and Wells
Fargo & Company, N.A., PENNY T. KNIPPS,
individually and in her capacity as V.P of WELLS
FARGO BANK, N.A., SUTIN, THAYER & BROWN,
P.C., SCOTT GARRETT, individually, THE SCOTT
AND PAMELA GARRETT TRUST DATED JUNE 14,
1999, BID GROUP, INC., GARRETT CAPITAL, LLC,
JULIE VARGAS, ESQ. and CATHERINE DAVIS, ESQ
counsel for Scott Garret, the Garret Trust, Garret Capital,
LLC, and Bid Group, Inc., HUNT & DAVIS, P.C., and
JOHN DOE and/or JANE DOE.

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On January 31, 2011, Defendant The Honorable Judge Theodore C. Baca (Judge Baca) filed a Motion To Dismiss And Memorandum In Support (Doc. No. 32). Plaintiff Daniel Cook filed his Opposition Response To Motion To Dismiss Memorandum in Support (Doc. No. 40) on February 7, 2011 and Judge Baca filed his Reply (Doc. No. 48) on February 22, 2011. Having considered the arguments of both parties as well as the applicable law, the Court concludes that Judge Baca's Motion to Dismiss should be granted and that the claims against Judge Baca

1

should be dismissed with prejudice.

## BACKGROUND

On January 14, 2011 Plaintiff Daniel Cook, appearing pro se, filed a one-hundred and seventeen page First Amended Complaint (Complaint) (Doc. No. 11) against Defendants The Honorable Theodore C. Baca, Wells Fargo Bank, N.A., Wells Fargo & Company, Jay D. Hertz, Michelle K. Ostrye, Penny T. Knipps, Sutin, Thayer & Brown, P.C., Scott Garrett, the Garrett Trust, Bid Group, Inc., Garrett Capital, LLC, Julie Vargas, Catherine Davis, Hunt & Davis, P.C., and John and Jane Doe. In his voluminous Complaint, Cook paints a rather confusing picture of alleged improprieties engaged in by Defendants during litigation in state court. Because Cook's "summary" of the factual basis for his Complaint spans fifty-three pages, and because the majority of the allegations are not relevant to the resolution of Judge Baca's Motion to Dismiss, the Court will only repeat the factual allegations that are relevant to Cook's claims against Judge Baca.

As best as the Court can determine from Cook's Complaint, Cook was involved in litigation with some of the Defendants[1] in state court relating to three corporations that Cook had some involvement in: Hydroscope Group, Inc., Hydroscope Inc., and CBM Group, Inc. (collectively Hydroscope). It is not clear from Cook's Complaint what involvement he had in the corporations, but it appears that Cook may have been a primary shareholder and that Cook may have invented the intellectual property owned by the corporations.  The nature of the state court litigation is also unclear, and despite devoting over thirty pages to describing the litigation, Cook does not identify exactly what the underlying causes of action were in state court. However, it

---

[1] Some of the Defendant's in this case represented the parties in the state court litigation and therefore were not parties to the state court litigation.

appears that Wells Fargo may have filed suit to foreclose outstanding loans owed by Hydroscope. It also appears that Hydroscope had used its intellectual property as collateral for the loans and that Wells Fargo was seeking to force a sale of that intellectual property to satisfy Hydroscope's loan obligations.  It is also apparent that originally Cook was not a party to the litigation directly but that at some point Cook was permitted to join the state court litigation as a party. In August 2008, after another state court judge recused, Judge Baca began to preside over the case.  On February 18, 2009, Judge Baca apparently ruled that Cook was not a proper party to the case and that Cook could no longer participate in the case.[2]  According to Cook, this ruling "denied Cook his equal civil rights to protect his property interests . . . and to have equal access to and be heard in a place of public accommodation."  Complaint at 41.  In April 2009, Cook appealed one of Judge Baca's decisions to the New Mexico Court of Appeals. At a hearing before Judge Baca a few days after Cook filed his appeal, Judge Baca advised Cook that Judge Baca no longer had jurisdiction over the case due to the pending appeal.

In August 2009, Cook "filed a cross complaint against the [sic] Wells Fargo and counter complaint against Garret et al . . . to preserve Cook's claims abandoned by the trustee of Cooks estate."  Complaint at 44.  Then, in October 2009, Wells Fargo filed a motion for a temporary restraining order (TRO) against Cook in state court.  Cook does not identify what Wells Fargo sought to restrain, and instead only characterizes the TRO as one to "formally and permanently impair . . . Cook's future federal protected equal civil rights in all state court proceedings."

---

[2]The Court notes that the preceding description of the state court litigation may not be entirely accurate as it is based solely on the allegations in Cook's Complaint.  Because Cook has failed to provide an accurate description of what occurred in state court, the Court is similarly unable to provide an accurate description of what occurred.  A detailed or even accurate understanding of the state court proceedings is not, however, necessary to resolution of Judge Baca's Motion to Dismiss.

However, it appears that the purpose of the motion was to preclude Cook from continuing to file motions and otherwise participate in the litigation as Cook was becoming a vexatious litigant. On October 14, 2009, Judge Baca held a hearing and entered an injunction that enjoined Cook from further participating in the state court litigation without first obtaining permission from Judge Baca.[3]

As a result of Judge Baca's issuance of the injunction,[4] Cook asserts six causes of action against Judge Baca. In count 1, Cook contends that Judge Baca discriminated against Cook on account of his race because Cook is a white male and Judge Baca is Hispanic. Other than the assertion that Cook is white and Judge Baca is Hispanic, Cook does not identify any factual information to support a claim that Judge Baca's actions were motivated by racial animus. In count 2, Cook contends that Judge Baca deprived Cook of his property and denied Cook's civil rights "because [Cook] was part of a minority group of white citizens in the state of New Mexico, *pro se*, and a bankrupt forced to litigate rights pro se." Complaint at 57. In count 3, Cook contends that Judge Baca violated 42 U.S.C. § 1983 and the 1st, 4th, 6th, and 14th amendments of the United States Constitution. In count 4, Cook contends that Judge Baca engaged in a conspiracy with the other defendants to interfere with Cook's civil rights in violation of 42 U.S.C. §1985. In count 5, Cook contends that Judge Baca violated 42 U.S.C. §1986 by neglecting to prevent the wrongs that Cook alleged in counts 1 through 4. And in count 6, Cook contends that Judge Baca discriminated against Cook in a place of public

---

[3] Despite devoting six pages of his Complaint to a discussion about the injunction, Cook never states with any specificity exactly what the injunction says.

[4] In his Response, Cook clarifies that all of his allegations against Judge Baca stem from Judge Baca's ruling in October 2009 that Cook could not participate in the state court litigation without prior approval of the court.

accommodation in violation of 42 U.S.C. §2000(a).

In his Motion to Dismiss, Judge Baca argues that Cook's Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief can be granted, that Judge Baca is immune from suit under the doctrine of judicial immunity, and that Judge Baca's actions were within his discretion and therefore cannot form the basis of a suit. Because the Court concludes that Judge Baca's judicial immunity argument is dispositive, the Court does not address Judge Baca's argument that Cook's complaint should be dismissed under Rule 12(b)(6) nor does the Court address Judge Baca's argument that his actions were discretionary.

## DISCUSSION

It is well established that judges enjoy complete immunity from "civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Judicial immunity was created out of a concern that "a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 355. As a result, "[j]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice." *Id.* Instead, judicial immunity is only overcome if a judge acted outside of his or her judicial capacity or if the judge's actions, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Id.*

In determining whether a judge acted in the absence of all jurisdiction, "the scope of the judge's jurisdiction must be construed broadly" and a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority;

5

rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump* 435 U.S. at 356 (quotation marks omitted). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359. Thus, even if a judge erroneously exercises his or her jurisdiction, and even if the judge's act is invalidated by that error, the judge will still enjoy judicial immunity. *See id.*

In one of the its first articulations of the judicial immunity rule, the United States Supreme Court explained the distinction between a court that acts in the clear absence of all jurisdiction and a court that acts in excess of its jurisdiction by noting that

> if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

*Bradley v. Fisher*, 80 U.S. 335, 352 (1871). In other words, it is only where a judge is acting completely outside of his subject matter jurisdiction that judicial immunity will not apply. A judge that merely exceeds his jurisdiction will still enjoy immunity for his acts.

Cook contends that Judge Baca acted without jurisdiction because, in February 2009, Judge Baca concluded that he had been divested of jurisdiction by Cook's act of filing an appeal. Contrary to Cook's argument, however, Judge Baca's determination that he had been divested of jurisdiction by Cook's appeal does not mean that Judge Baca completely lacked jurisdiction such

that Judge Baca no longer enjoyed judicial immunity for his judicial acts. Even after a party files an appeal, "the trial court always retains jurisdiction to enforce its unsuperseded judgment" and to resolve matters that are collateral to and separate from the decision on the merits. *Kelly Inn No. 102 v. Kapnison*, 113 N.M. 231, 238, 824 P.2d 1033, 1040 (1992). Because Judge Baca retained jurisdiction after Cook filed an appeal, Judge Baca cannot be said to have acted in the clear absence of all jurisdiction when he enjoined Cook from participating in the state court litigation. *See Ysais v. New Mexico*, 373 Fed.Appx. 863, 866 (10th Cir. 2010) (unpublished) (rejecting a claim that a judge lost judicial immunity by "continu[ing] to adjudicate [a] divorce case even after [the plaintiff] filed an appeal" because "[a] judge acts in the clear absence of all jurisdiction only when he acts clearly without any colorable claim of jurisdiction"). Even if Judge Baca exceeded the jurisdiction that he retained after Cook filed his notice of appeal, Judge Baca nevertheless had jurisdiction and therefore enjoys judicial immunity for his acts.

Because Judge Baca is immune from suit for the acts that Cook complains of, the Court concludes that Judge Baca's Motion to Dismiss should be granted and that all of the claims asserted by Cook against Judge Baca should be dismissed with prejudice.

IT IS ORDERED THAT Defendant The Honorable Judge Theodore C. Baca's Motion To Dismiss And Memorandum In Support (Doc. No. 32) is GRANTED and that all of the claims asserted against Judge Baca in Cook's First Amended Complaint (Doc. No. 11) will be dismissed with prejudice.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT COURT JUDGE