## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DANIEL W. COOK**, individually,

     Plaintiff,

vs.                                                                 No. 10-cv-1173 JP/KBM

**THE HONORABLE THEODORE C. BACA**,
individually and in his official capacity; **WELLS
FARGO BANK, N.A.; WELLS FARGO & COMPANY;
JAY D. HERTZ, ESQ. and MICHELLE K. OSTRYE, ESQ.**,
both individually and as counsels for Wells Fargo Bank, N.A. and
Wells Fargo & Company, N.A.; **PENNY T. KNIPPS**, individually
and in her capacity as a V.P. of Wells Fargo Bank, N.A.;
**SUTIN, THAYER BROWNE, P.C.; SCOTT GARRETT** individually;
**THE SCOTT AND PAMELA GARRETT TRUST** dated June 14, 1999;
**BID GROUP, INC.; GARRETT CAPITAL, LLC; JULIE VARGAS, ESQ. and
CATHERINE DAVIS, ESQ.**, both counsels for Scott Garrett,
the Garrett Trust, Garrett Capital, LLC, and Bid Group, Inc.;
**HUNT & DAVIS, P.C.; JOHN DOE and/or JANE DOE**,

     Defendants.

### MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT

Defendants Wells Fargo Bank, N.A., Wells Fargo & Company, Jay D. Hertz, Michelle K.
Ostrye, Penny T. Knipps, and Sutin, Thayer & Browne, P.C. (collectively Wells Fargo) and
Defendants Scott Garrett, Scott and Pamela Jane Garrett as Trustees of the Scott Garrett and
Pamela Garrett Family Trust dated June 14, 1999, Bid Group, Inc., Garrett Capital, LLC,
Catherine F. Davis, Julie J. Vargas and Hunt & Davis, P.C. (collectively "Garrett") filed separate
motions to dismiss Plaintiff Daniel Cook's Amended Complaint on the grounds that the *Younger*
abstention doctrine precludes the Court from considering Cook's claims, that the *Rooker-
Feldman* doctrine bars Cook's claims, and that Cook has failed to state claims for which relief
can be granted.  Because the state court proceeding that forms the basis of the majority of

Cook's claims was remedial, not coercive, the Court concludes that the *Younger* abstention doctrine does not bar the Court from considering Cook's claims.  However, the Court also concludes that Cook has failed to state any federal claims for which relief can be granted and that Cook's federal claims should therefore be dismissed with prejudice.  Because the Court will dismiss Cook's federal claims, the Court declines to exercise its supplemental jurisdiction over Cook's remaining state law claims and it is therefore unnecessary to determine whether the *Rooker-Feldman* doctrine bars the Court's consideration of Cook's remaining claims as these claims will be dismissed without prejudice.

## PROCEDURAL BACKGROUND

On January 28, 2011, Wells Fargo filed a Motion To Dismiss Plaintiff's First Amended Complaint (Wells Fargo Motion to Dismiss) (Doc. No. 27).  In response, Cook filed a Motion to Strike Wells Fargo's Motion to Dismiss (Motion to Strike) (Doc. No. 33).  On February 25, 2011, Garrett also filed a Motion to Dismiss for Lack of Jurisdiction (Garret Motion to Dismiss) (Doc. No. 52).  The defendants argue in their motions to dismiss that the Court lacks jurisdiction over Cook's claims under the *Younger* and *Rooker-Feldman* abstention doctrines, that Cook does not have standing, that Cook's claims are barred by collateral estoppel, and that Cook has failed to state cognizable federal claims.

On March 18, 2011, the Court issued an Order (Doc. No. 54) denying Cook's Motion to Strike and giving Cook until March 18 to file a response to the Wells Fargo Motion to Dismiss.  Cook subsequently filed an Emergency Motion to Extend Time to File Plaintiff's Responses (Emergency Motion to Extend) (Doc. No. 57).  The Court granted Cook's Emergency Motion to Extend and gave Cook until March 25, 2011 to file his responses to both the Garrett Motion to Dismiss and the Wells Fargo Motion to Dismiss.  *See* Doc. No. 59.  Cook timely filed his Response

to the Garrett Motion to Dismiss (Cook's Garret Response) (Doc. No. 58) on March 18, 2011. However, on March 21, 2011 Cook filed a Motion to Extend Time to File Response (Doc. No. 60) seeking an extension until April 15, 2011 to file his response to Wells Fargo's Motion to Dismiss. Also on March 21, 2011, Cook filed an Amended Response (Doc. No. 61) to the Garrett Motion to Dismiss, and a Notice of Errata and Correction (Doc. No. 62) that related to Cook's Response to the Garret Motion. Garrett filed its Reply (Garrett's Reply) (Doc. No. 64) on April 4, 2011.

On March 28, 2011, Wells Fargo filed a Response in Opposition (Doc. No. 63) in which Wells Fargo objected to Cook's request for an additional extension of time to file his response to Wells Fargo's Motion to Dismiss. Despite the fact that Wells Fargo objected to Cook's request that he be given until April 15, 2011 to file a response to the Wells Fargo Motion to Dismiss, and despite the fact that the Court did not rule on Cook's Motion to Extend, Cook nevertheless waited to file his Response in Opposition to the Wells Fargo Motion to Dismiss (Cook's Wells Fargo Response) (Doc. No. 68) until April 15, 2011—the date that Cook had requested in his Motion to Extend Time to File Response.   Despite Cook's unilateral decision to extend the date on which his response was due until April 15, 2011, Wells Fargo timely filed its Reply (Wells Fargo's Reply) (Doc. No. 74) on May 2, 2011.  Cook then filed a Motion to File Surreply, Alternatively Plaintiff Request the Court Refrain From Relying on Wells Fargo Et Al's New Arguments and/or Materials in Reply (Surreply Motion) (Doc. No. 78) on May 9, 2011.

In addition to the multiple filings related to the pending motions to dismiss, Cook also filed an Emergency Motion for Temporary Restraining Order and for Preliminary Injunction (TRO Motion) (Doc. No. 72) on April 28, 2011. In his TRO Motion, Cook sought to enjoin Wells Fargo from participating in  a state court hearing that was scheduled to occur a few hours after Cook filed his TRO Motion on April 28, 2011. Cook later "corrected" his TRO Motion with a Notice of Errata

3

and Correction (Doc. No. 77) that Cook filed on May 2, 2011. Wells Fargo filed a Response (TRO Response) (Doc. No. 80) to Cook's TRO Motion on May 13, 2011 and Cook filed a Reply (TRO Reply) (Doc. No. 91) on May 27, 2011.

Having considered the record, the arguments raised by the parties, and the applicable law, the Court concludes that Cook's Motion to Extend should be denied, that Cook's Motion to File a Surreply should be denied, that both the Wells Fargo Motion to Dismiss and the Garrett Motion to Dismiss should be granted, that Cook's Amended Complaint should be dismissed in its entirety, and that Cook's TRO Motion should be denied.

## BACKGROUND

Cook has been involved in litigation with most of the Defendants since 2003 in this Court, the New Mexico state courts, and this District's bankruptcy court. The litigation primarily involves four corporations—Hydroscope Group, Inc. (which was formerly known as Trenchless Infrastructure Technologies, Inc. and is also known as Hydroscope Integrated Technologies, Inc., *see* Amended Complaint at 68), Hydroscope, Inc. USA, Hydroscope Canada, and CBM Group, Inc.—in which Cook apparently is or was a major shareholder. Cook recently removed, and this Court remanded, state-court litigation of two consolidated cases involving Cook, the Defendants (except for Judge Theodore C. Baca and counsel), and the corporations. *See Garrett v. Trenchless Infrastructure Techn.,* No. 10-cv-71 BB/ACT. Cook's current Amended Complaint focuses on that same state-court litigation. The Court takes judicial notice of Chief Judge Bruce Black's August 11, 2010 Memorandum Opinion (Doc. No. 42 in 10-cv-72) remanding the *Garrett* case because it efficiently assists in clarifying the procedural and substantive posture of the state-court litigation and the state-court summary-judgment order and order for injunctive relief about which Cook complains in the case at bar. As Judge Black explained in his August 11, 2010 opinion

> [t]his litigation has a long and tortured history. Initiated almost seven years ago, this matter has seen the addition and subtraction of claims, parties, suits, and complaints. It has included bankruptcy proceedings and federal-court abstention, has been the subject of an appeal to the New Mexico Court of Appeals, has spawned a request for extraordinary writs to the New Mexico Supreme Court, and, in its relatively brief stay in this Court, has included eight motions. And yet even this laundry list of procedural gambits gives the impression that the suit has progressed, though in a herky-jerky fashion, along a complex but coherent path. It has not. This matter's unorthodox posture is almost wholly attributable to the efforts of *pro se* litigant Daniel Cook. Mr. Cook's filings have moved the suit hither and yon—from court to court, judge to judge—forcing the parties and the courts to untangle novel, largely unsupported arguments and procedural machinations.
>
> Rather than fell a not insignificant portion of wilderness in papering an exposition of the suit's history—which the parties are painfully familiar with—this Court provides the following overview of the pertinent filings, omitting irrelevant chapters in the litigation and extraneous detail. This case began in state court where, in November 2003, Garrett sued, *inter alia,* Mr. Cook and a company that Mr. Cook was an officer and director of, Hydroscope Group Inc. The Complaint was later amended to assert a claim against Wells Fargo, who, in turn, filed cross-claims against, *inter alia*, Hydroscope. Mr. Cook responded in November 2005 by initiating a new suit in the Second Judicial District of New Mexico in which he alleged claims against Wells Fargo. Garrett eventually followed by filing a Second Amended Complaint in March 2006. The cases were consolidated and, in February 2009, Wells Fargo received summary judgment on all claims against it.
>
> In August 2009, Mr. Cook took the unusual step of filing an additional, though apparently not superceding, complaint in the consolidated state-court case—again asserting claims against, *inter alia*, Wells Fargo. In response, Wells Fargo asked the court to enjoin Mr. Cook from making additional filings without either obtaining counsel or receiving leave. Finding that Mr. Cook "ha[d] engaged in a pattern of litigation activity that is abusive and vexatious," the state court granted Wells Fargo's injunction. Wells Fargo, *inter alia*, then moved to dismiss Mr. Cook's August 2009 complaint. A hearing was scheduled for January 28, 2010. One day before the hearing, Mr. Cook removed the litigation to federal court.

*Garrett v. Trenchless Infrastructure Techn.,* No. 10cv71 BB/ACT Doc. 42 at 2-3 (D.N.M. Aug. 11,

2010). Judge Black noted that, "[i]n removing, Mr. Cook filed both a notice of removal and an

'alternative complaint.' Though Mr. Cook eventually withdrew the 'alternative complaint' he

waited until after the opposing parties had incurred the expense of drafting and filing motions." *Id.*

at 3, n.3. A review of the allegations in this "alternative complaint" shows that many are the same

or similar allegations that Cook makes in his current federal complaint against Judge Theodore C. Baca, who presided over much of the state-court litigation, for discrimination and violation of Cook's due-process rights, and against the other Defendants for allegedly conspiring with Judge Baca. Cook represented in his previous pleadings that, if this Court sustained his removal of the state-court cases, he would dismiss "forevermore, with prejudice . . . claims . . . against . . . [Judge] Baca," but that he "reserve[d]" the right to amend the complaint to include new federal claims against the other Defendants. *See Garrett*, No. 10cv71 BB/ACT, Doc. 4, Att. 1 at 20 n.7. Judge Black noted that "it appears from the record that Mr. Cook's removal had far less to do with obtaining federal jurisdiction than it did with avoiding state-court jurisdiction—specifically the state court's injunction and the impending hearing on the motion to dismiss." *Id.* at 6. The Tenth Circuit Court of Appeals dismissed Cook's appeal of the remand and rejected his arguments that he met an exception to the rule of nonreviewability because "Mr. Cook's conclusory allegations of racial discrimination in the state courts do not meet the requirements of § 1443(1)." *Garrett,* No. 10cv71 BB/ACT Doc. 69 at 3 (Tenth Circuit Opinion No. 10-2207, filed Nov. 3, 2010).

As far as the Court can make sense of Cook's 117-page, rambling "shotgun"[1] Amended

---

[1] "The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 371 (10th Cir. 1989) (affirming dismissal of shotgun RICO complaint because it "failed to state a claim under any conceivable matching of allegations"). A "shotgun pleading" "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief. The general allegations are incorporated by reference into each count of the complaint . . . ." *Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). A shotgun pleading inevitably propagates unnecessarily broad discovery and confusion regarding claims because the plaintiff, as here, has incorporated numerous extraneous and immaterial allegations into every count and request for relief. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001); *Johnson Enter.*, 162 F.3d at 1333. Thus, a shotgun pleading prevents the parties and the court from understanding what the case is really about because the complaint is so cluttered with irrelevant and unrelated facts. "Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims" *Byrne*, 261 F.3d at 1130. "Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard." *Id.* at 1131.

Complaint, Cook is bringing three types of federal claims against the Defendants, along with an assortment of state-law claims. Because only the federal claims stated in Cook's Amended Complaint are relevant to the Court's analysis of the defendants motions to dismiss, the Court will not try to recite the multitude of state law claims asserted by Cook and will only address the federal claims asserted by Cook.

First, Cook brings claims for racial discrimination and for violation of his due-process rights under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 2000a against Judge Baca, and for conspiracy against Wells Fargo and Garrett regarding those claims, because Judge Baca issued orders that were unfavorable to Cook. *See* Counts I-VI. One of these orders is a preliminary injunction that limited Cook's right to file future pleadings in state court against Wells Fargo and Garrett without first seeking Judge Baca's permission. As Judge Black noted, the motion for injunctive relief was filed after Cook attempted to file a new 126-page complaint against Wells Fargo and Garrett Group in the pending state-court proceedings. Cook contends that his civil rights were violated because he was not given sufficient due process at the state-court hearing during which Judge Baca ruled on the motion for injunctive relief. The Court has dismissed all claims against Judge Baca with prejudice because he is entitled to absolute judicial immunity. *See* March 3, 2011 Memorandum Opinion and Order (Doc. No. 55). Second, Cook attempts in Count VII to bring a federal claim for an alleged violation of the Security and Exchange Commission's (SEC) Rule 10b-5, which is codified at 17 C.F.R. § 240b-5, against Wells Fargo and Garrett for alleged wrongdoing associated with the sale or transfer of securities. Am. Compl. at 77. Finally, in Counts X-XIII, Cook attempts to bring several claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(b), (c), and (d) against Wells Fargo and Garrett based on (a) Scott Garrett's purchase and transfer of shares of Hydroscope Group in 1999 and his subsequent filing of

7

lawsuits and alleged failure to keep promises or to settle his claims regarding that purchase, *see* Amended Complaint at 94-95; (b) Wells Fargo's filing of liens against Hydroscope, its activities and representations and filing of documents in the bankruptcy and state-court suits, and obtaining an appraisal of the intellectual property that secured a loan to Hydroscope, *id.* at 96-100, 104-114; and (c) the Garrett's counsel's activities in representing, and charging fees to, their clients for representation. *Id.* at 97-99.

Regarding his discrimination, civil rights, and due-process claims, Cook "seeks relief based on the acts of Defendants at hearings held on February 18, 2009 and October 14, 2009 on the process due and not provided in state court action [but] does not seek relief in this Court on the orders entered in state court." Amended Complaint at 56.  Cook opines that such relief "would not render any state courts orders entered nugatory" and contends that he seeks only compensatory damages.  *See id.* at 67.  As to his state-law claims for fraud and violation of state statutes, Cook requests compensatory, consequential, and punitive damages, an order requiring Wells Fargo to post a bond, and an injunction barring Wells Fargo from making what Cook insists are "false allegations in collateral interest in securities of the Cooks" and an injunction barring the Garrett Trust from "making false allegations . . . as an illegal transferee of restricted shares in Group." *See id.* at 77-78. For his state-law breach-of-contract, unfair-trade-practices, and malicious-prosecution claims against Wells Fargo and the Garrett Trust, Cook seeks compensatory, punitive, and treble damages. *See id.* at 86, 89-90.  For the RICO counts, Cook seeks compensatory and treble damages as well as injunctive relief, including enjoining all of the individual Defendants from participating in the management and/or control of Wells Fargo and the Garrett Trust; to enjoin the Defendants from destroying documents or information related to Cook's bankruptcy case and the state-court cases in which he has been involved; and to "refer" this case to the United States Attorney for criminal

8

prosecution for the alleged RICO violations. *Id.* at 115-16.

Cook has recently also filed an emergency motion for a temporary restraining order that would "enjoin the Defendants from continuing with litigation" and would also enjoin a state-court hearing that was to be held on April 28, 2011. *See* Doc. 72. Cook seeks to stay all proceedings in the state-court litigation involving the Garret Trust and Trenchless Infrastructure/Hydroscope Group as plaintiffs against Wells Fargo Bank as the only remaining Defendant, which he alleges will negatively affect his property rights and the property rights of his bankruptcy estate and the creditors therein. *See* Doc. 72 at 4-5, 14-15.

## DISCUSSION

### I.  Cook's Motion to Extend should be denied.

In his Motion to Extend, Cook requested that the Court extend the deadline for filing Cook's Response to the Wells Fargo Motion to Dismiss until April 15, 2011. As grounds for his Motion to Extend, Cook noted that his response to the Garrett Motion to Dismiss was due on the same day as his response to the Wells Fargo Motion to Dismiss, that there were multiple issues raised in the Wells Fargo Motion to Dismiss, and that, as a pro se plaintiff, Cook had limited access to the legal resources necessary to draft his response. In addition, Cook asserted that he had suffered some type of computer malfunction that erased a significant portion of work he had done on his response to the Garrett Motion to Dismiss and that he therefore had to delay preparation of his response to the Wells Fargo Motion to Dismiss so that he could rewrite the deleted material.

Wells Fargo filed its Motion to Dismiss on January 28, 2011. The Court gave Cook an extension to March 18, 2011 to file a response. . See March 4, 2011 Memorandum Opinion and Order (Doc. No. 54) at 7. Four days before his response was due, Cook filed his Emergency Motion to Extend seeking an extension until March 25, 2011. The Court granted Cook's Emergency Motion

to Extend, and ordered Cook to file his response by March 25, 2011.  *See* March 21, 2011 Memorandum Opinion and Order. On the same day that the Court granted Cook's Emergency Motion to Extend, Cook filed his Motion to Extend, requesting an additional extension until April 15, 2011.  While the Court did not rule on Cook's Motion to Extend prior to the March 25, 2011 deadline, Cook nevertheless waited until April 15, 2011 to file his Wells Fargo Response.

While Cook argues in his Motion to Extend that an extension is necessary due to the complexity of the issues and his inability to access legal materials, the Court notes that these challenges are no different than those faced by any other litigant.  In addition, Cook chose to bring a rather complex case against the Defendants and asserted a large number of claims in his First Amended Complaint.  Cook cannot complain that he is prejudiced by the number of legal issues raised in Wells Fargo's Motion to Dismiss when Cook precipitated those issues by filing a long and rambling First Amended Complaint that required a lengthy and complex motion to dismiss.  In addition, given that both Garrett and Wells Fargo raised a number of the same issues in their motions to dismiss, a significant amount of additional research was not necessary for Cook to complete his Wells Fargo Response.  Further, the Court notes that, by raising a number of baseless challenges to Wells Fargo's Motion to Dismiss, Cook already significantly lengthened the amount of time he needed to prepare a response.  Since Wells Fargo filed its Motion to Dismiss on January 28, 2011 and Cook's response was not due until the extended deadline of March 25, 2011, Cook had nearly two months to draft a response.  Because Cook has not provided the Court with any reasonable justification for why he should have been granted an additional extension of time to file his Wells Fargo Response , the Court concludes that Cook's Motion to Extend should be denied.

Because Cook did not file his Wells Fargo Response until April 15, 2011, and because his Wells Fargo Response was due on March 25, 2011, Cook's Wells Fargo Response is untimely.

Despite the fact that Cook's Wells Fargo Response was not filed in a timely manner, the Court will nevertheless consider the arguments raised in Cook's Wells Fargo Response both out of fairness to Cook and because a number of the same arguments are raised in Cook's timely Garrett Response. Cook is cautioned, however, that he must strictly comply with the Court's orders regarding the dates that his briefs are to be filed and he is also strictly required to comply with the local rules regarding filing deadlines even though he is a pro se litigant. Future failures to timely file a response to a motion will be deemed to be consent to grant the motion. D.N.M. LR-Civ. 7.1(b) (providing that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion").

## II. *Younger* abstention is not appropriate in this case.

Both Wells Fargo and Garrett argue that the Court is precluded from considering Cook's claims under the *Younger* abstention doctrine. The *Younger* abstention doctrine requires "a federal court [to] abstain from exercising jurisdiction when (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state polices." *Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009) (quotation and alteration marks omitted). When considering these three conditions, the Court must "be sensitive to the competing tension between protecting federal jurisdiction and honoring principles of Our Federalism and comity . . . keep[ing] in mind that abstention is the exception, not the rule." *Id.* (quotation and alteration marks omitted). The abstention doctrine should therefore "be rarely invoked, because federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Id.* (quotation and alteration marks omitted). Despite its limited application, the *Younger* abstention

doctrine is mandatory "once the conditions [necessary to invoke the doctrine] are met, absent extraordinary circumstances." *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce*, 240 F.3d 871, 875 (10th Cir. 2001) (internal quotation marks omitted). Because *Younger* abstention is mandatory if the conditions are met, the Court must first address application of the doctrine to this case.

Wells Fargo and Garrett contend that all of Cook's federal claims are barred by the *Younger* abstention doctrine because "to award Mr. Cook the relief he seeks in his First Amended Complaint, this Court would have to review the rulings made by the state court and the bankruptcy court and conclude that those rulings were erroneous." Doc. 27 at 2. Defendants contend that, "[t]o the extent the First Amended Complaint attacks non-final state court rulings, including the February 18, 2009, summary judgment in favor of Wells Fargo Bank, those claims must be dismissed without prejudice under *Younger*. (Doc. No. 27 at 3). They contend that the state court has authority to rule on Cook's discrimination and civil-rights claims and that Cook therefore has an adequate state forum in which to address his federal claims. *See* Doc. 8 at 4-5.

The initial prong of the *Younger* inquiry involves two sub-parts. First, the Court must determine "whether there is an *ongoing* state proceeding." *Brown*, 55 F.3d at 888 (emphasis in original). Second, the Court must determine "whether that proceeding is the *type* of state proceeding that is due the deference accorded by *Younger* abstention." *Id.* (emphasis in original). Neither side disputes that there is an ongoing state proceeding. Thus, the Court's first inquiry is whether the state court proceedings are the type of proceeding that is due the deference accorded by *Younger* abstention.

As the United States Supreme Court has suggested, "*Younger* abstention is limited to situations where the "civil proceedings" in question (1) are enforcement proceedings or (2)

"involv[e] certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989). Thus, whether the *Younger* abstention doctrine applies depends on whether a state proceeding is remedial or coercive. *See Brown*, 555 F.3d at 889. To determine whether a proceeding is remedial or coercive, the Tenth Circuit "use[s] the dichotomy between remedial and coercive administrative proceedings set forth in *Dayton Christian Schools*, 477 U.S. at 627 n. 2, 106 S.Ct. 2718, as the touchstone for determining whether [an] administrative proceeding is the type of proceeding that merits *Younger* abstention." *Id.*

This dichotomy requires the Court to first "query whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory (a coercive proceeding)." *Id.* Second, the Court "must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial)." If, after making this inquiry, the Court determines that the state court proceeding is coercive, then the proceeding is entitled to *Younger* deference. If, on the other hand, the proceeding is remedial, then *Younger* is inapplicable. *See id.* at 891.

In arguing that the *Younger* abstention doctrine bars this Court's consideration of Cook's claims, the Wells Fargo and Garrett ignore the fact that the state-court proceedings are not the type of coercive, state-initiated proceedings to which mandatory *Younger* abstention applies. Wells Fargo and Garrett do not contend that the state initiated proceedings against Cook or that Cook is asserting that the state proceeding itself is unlawful. In fact, it appears to the Court that the state proceedings are exactly the type of remedial proceedings to which *Younger* does not apply—proceedings

13

initiated to right a wrong allegedly inflicted by the state and seeking a remedy for a wrong allegedly inflicted by the state. On this basis alone, the Court concludes that *Younger* is inapplicable. Further, even if the state proceedings were deemed to be coercive, the Court notes that the state court has refused to allow Cook to raise his federal claims against the Wells Fargo and Garrett by precluding Cook from filing a new complaint and by placing filing restrictions on Cook. Because the state court has precluded Cook from raising these claims in state court, *Younger* abstention would be inappropriate even if the state court proceedings were not remedial

## III.     Cook has failed to state any cognizable federal claims.

Both Wells Fargo and Garrett argue that Cook's federal claims should be dismissed because Cook has failed to state a claim for which relief can be granted. A careful review of Cook's Amended Complaint reveals that he has not stated facts sufficient to support any of his federal claims against any of the remaining Defendants. Because Cook has not alleged a cognizable federal claim, the Court need not determine whether the *Rooker-Feldman* doctrine precludes his claims.

In the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted. The Supreme Court has warned that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555. Thus, for example, "a naked assertion of conspiracy . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id*. at 557. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Under the *Twombly* and *Iqbal* standard, the Court takes a two-step approach to determine whether a complaint states a claim upon which relief may be granted. First, the Court must "identify the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregard them. *Id.* at 1951. Then, the Court must only "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*; *see id.* at 1954 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted). In order to withstand a challenge under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (internal quotation marks omitted).

## A. Racial Discrimination

Cook's allegations regarding racial discrimination—that Judge Baca ruled against Cook because he is white and Judge Baca is Hispanic—and conspiracy—that the Defendants conspired with Judge Baca by seeking rulings that were not in Cook's favor—are nothing more than conclusory statements that do not support a plausible cause of action under any federal statute. In his 117 page Amended Complaint, Cook does not identify any conduct or actions on the part of Judge Baca, Wells Fargo, or Garret that indicates that Cook's race was a consideration in any of Judge Baca's rulings. Rather, Cook makes the conclusory and unsupported assertion that because

15

Cook is white and Judge Baca is Hispanic, and because Judge Baca ruled against Cook on a number of occasions, Judge Baca must have been discriminating against Cook on account of his race. Because Cook has not identified any factual basis for his claim of racial discrimination, the Court concludes that the federal causes of action asserted in Counts I-VI should be dismissed with prejudice for failure to state a claim for which relief can be granted.

## B. Violation of SEC Rule 10b-5

In Count VII, Cook attempts to bring federal claims based on Wells Fargo, Scott Garrett, and the Garrett Trust's alleged violations of SEC Rule 10b-5, codified at 17 C.F.R. § 240.  Rule 10b-5 makes it

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.  Cook alleges that Wells Fargo and Garrett engaged in fraud by making specific misrepresentations in the state-court and bankruptcy proceedings.  However, to state a cause of action under Rule 10b-5, the alleged violation must be made "in connection with the purchase or sale of any security."  *Caprin v. Simon Transp. Servs., Inc.*, No. 01-4049, 99 Fed. App'x 150, 155, 2004 WL 326995, *3 (10th Cir. Feb. 3, 2004) (noting that " Rule 10b-5 prohibit[s] the use of manipulative and deceptive devices in the sale of securities").  Nowhere does Cook allege that Wells Fargo or the Garrett Trust made fraudulent statements or misrepresentations while selling securities

or offering securities for purchase.  Cook has therefore failed to state a claim for violation of Rule 10b-5, and that claim must be dismissed with prejudice.

## C. RICO claims

Finally, Cook attempts to bring several claims for violation of RICO under 18 U.S.C. § 1962(b), (c), and (d) against Wells Fargo, the Garrett Group, and their respective counsel.  Section 1962(b) makes it  unlawful for "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  19 U.S.C. §1962(b). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §1962(c). Finally, Section 1962(d) makes it unlawful "for any person to conspire to violate" §1962(a), (b), or (c).  18 U.S.C. §1962(d).

To prove his claims that the defendants violated 18 U.S.C. §1962, Cook "must show that [the defendants] (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Resolution Trust Corp. v. Stone* , 998 F.2d 1534, 1541 (10th Cir. 1993). An enterprise may be either a legal entity or a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  To plead the existence of such an enterprise, the complaint must show (1) "an ongoing organization with a decision-making framework or mechanism for controlling the group;" (2) with associates that "function as a continuing unit;" and (3) which is "separate and apart from the pattern of racketeering activity." *United States v. Sanders*, 928 F.2d 940, 943-44 (10th Cir.1991)  Racketeering activity is defined "as any act in violation of specified state and

17

federal crimes, including wire fraud, bank fraud, and fraud in the sale of securities."[2] *Resolution Trust Corp.*, 998 F.2d at 1543.  A "pattern" requires 'at least two acts of racketeering activity' within a ten-year period." *Id.*

Cook characterizes Wells Fargo and Garrett as an "enterprise" because they have opposed him in various court proceedings, even though their interests in the various proceedings have been totally divergent[3] (except for agreeing that Cook should be foreclosed from filing any more lawsuits against them).  Aside from this threadbare assertion that the defendants are an "enterprise" for purposes of RICO, Cook has failed to identify, or even allege, any facts that would support a finding that the Defendants are involved in "an ongoing organization with a decision-making framework or mechanism for controlling the group." *Sanders*, 928 F.2d at 943-44. Cook has thus failed to show that Wells Fargo and Garrett have any of the characteristics of an enterprise as defined in the RICO statutes and case law.  Further, Cook has failed to plead any facts that suggest that Wells Fargo and Garrett were involved in any racketeering activity at all, much less a pattern of racketeering activity.  Because Cook has failed to plead any facts that indicate the defendants are involved in an enterprise or any facts that indicate that the defendants engaged in any racketeering activity, the Court concludes that Cook's RICO claims should be dismissed with prejudice.

**D. Dismissal With Prejudice**

The Court acknowledges that ordinarily, "the dismissal of a pro se claim under Rule 12(b)(6)

---

[2] While the statutory definition of "racketerring activity" includes other activity, such as "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, [and] dealing in a controlled substance," the portion of the definition related to securities is the only one that has any relevance to Cook's allegations. *See* 18 U.S.C. §1961(1)

[3] In fact, as Cook bitterly complains in his Amended Complaint, Wells Fargo obtained summary judgment against both Hydroscope Group, Inc. and the Garrett Trust in state court.  *See* Doc. 7, Ex. 1 at 4-5.

18

should be without prejudice" and that a pro se litigant should be given leave to amend his complaint to remedy any deficiencies in the complaint. *Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010). However, dismissal with prejudice is proper "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001). As the Court has noted in concluding that each of Cook's federal claims should be dismissed, Cook has utterly failed to plead any facts that would in any way support his federal claims. And, considering that Cook devoted at least 53 pages of his 117 page Amended Complaint to setting out the factual basis for his claims and failed to plead a single fact that would support his federal claims, the Court concludes that it would be futile to allow Cook to further amend his complaint. Thus, Cook's federal claims will be dismissed with prejudice.

## IV.   The Court will not exercise its supplemental jurisdiction over the remaining state-law claims.

Because the Court has concluded that all of Cook's federal claims should be dismissed, federal-question jurisdiction in this case no longer exists. While the Court has discretion to retain supplemental jurisdiction over Cook's remaining state law claims, the Court declines to exercise that discretion and will therefore dismiss Cook's state law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) (providing that the court "may decline to exercise [supplemental] jurisdiction" if "the district court has dismissed all claims over which it had original jurisdiction"); *Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (internal quotation marks omitted).

**V.     The motion for injunctive relief is now moot and is further barred by the Anti-Injunction Act.**

Because the Court is dismissing all of the claims asserted in Cook's First Amended Complaint and this case, Cook's TRO Motion is moot.  And, even if Cook's TRO Motion were not moot, the Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  The Anti-Injunction Act "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).  "State proceedings should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Id.* (internal quotation marks omitted). Because "a  federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law . . . , when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court. *Id.* at 149-50 (internal quotation marks and citations omitted).  "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (internal quotation marks omitted).  Because Cook has not identified any express Congressional authorization that would allow the Court to enjoin the pending state court proceedings, and because an injunction is not necessary to aid the Court's jurisdiction or to protect or effectuate the Court's judgments, the Court concludes that the Anti-Injunction Act

expressly prohibits the Court from enjoining the pending state Court proceedings.  Thus, Cook's TRO Motion will be denied.

## VI.  Cook's Surreply Motion Should be Denied

In his Surreply Motion, Cook requests leave to file a surreply to Wells Fargo's Reply on the grounds that Wells Fargo made a number of arguments for the first time in its Reply and attached new exhibits to its Reply. Alternatively, Cook requests that the Court refrain from considering the new arguments and materials in Wells Fargo's Reply.  In its Response (Doc. No. 80) to Cook's Surreply Motion, Wells Fargo acknowledges that it made new arguments in its Reply and requests that the Court allow Cook to file a 12 page surreply that addresses only the new arguments and evidence raised in Wells Fargo's Reply.

While both Cook and Wells Fargo are in agreement that Cook should be permitted to file a surreply, the Court concludes that Cook's Surreply Motion should be denied because the Court has concluded that Cook's Amended Complaint should be dismissed without considering any of the new arguments or evidence introduced Wells Fargo's Reply.  Because the Court did not rely on the new argument or materials in Wells Fargo's Reply in determining that Cook's Amended Complaint should be dismissed, the Court concludes that additional briefing on the issues not considered by the Court is unnecessary.  *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159 (10th Cir. 1998) (noting that when a party makes a new argument or submits new material in a reply, a district court can either "permit[] a surreply" or "refrain from relying on any new material contained in the reply brief").  Thus, Cook's Surreply Motion will be denied.

**IT IS ORDERED** that:

1)      Plaintiff's  Motion to Extend Time to File Response (Doc. No. 60) is DENIED;

2)      Plaintiff Daniel Cook's Motion to File Surreply, Alternatively Plaintiff Request the

Court Refrain From Relying on Wells Fargo Et Al's New Arguments and/or Materials in Reply (Doc. No. 78) is DENIED;

3) Wells Fargo's Motion To Dismiss Plaintiff's First Amended Complaint (Doc. No. 27) and Garrett's  Motion to Dismiss for Lack of Jurisdiction (Doc. No.  52) are GRANTED as set forth in this Memorandum Opinion and Order; and

4) Plaintiff's federal claims against all remaining Defendants will be DISMISSED WITH PREJUDICE and that his state-law claims will be DISMISSED WITHOUT PREJUDICE.

_____

SENIOR UNITED STATES DISTRICT JUDGE