IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANIEL W. COOK, individually,**

    Plaintiff,

vs.                                                                             No. 10-CV-1173 JP/KBM

**THE HONORABLE THEODORE C. BACA,**
**individually and in his official capacity;**
**WELLS FARGO BANK, N.A.;**
**WELLS FARGO & COMPANY, N.A.;**
**JAY D. HERTZ, ESQ.**
**and MICHELLE K. OSTRYE, ESQ.,**
**both individually and as counsels for Wells Fargo Bank, N.A. and**
**Wells Fargo & Company, N.A.;**
**PENNY T. KNIPPS, individually**
**and in her capacity as a V.P. of Wells Fargo Bank, N.A.;**
**SUTIN, THAYER, BROWNE, P.C.; SCOTT GARRETT individually;**
**THE SCOTT AND PAMELA GARRETT TRUST dated June 14, 1999;**
**BID GROUP, INC.; GARRETT CAPITAL, LLC;**
**JULIE VARGAS, ESQ. and**
**CATHERINE DAVIS, ESQ., both counsels for Scott Garrett,**
**the Garrett Trust, Garrett Capital, LLC, and Bid Group, Inc.;**
**HUNT & DAVIS, P.C.; JOHN DOE and/or JANE DOE,**

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION**
**UNDER Fed. R. Civ. P. 59(e) and 60(b)**

    Plaintiff Daniel W. Cook pro se (Plaintiff) asks the Court to reconsider the

MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT (Doc. No. 94) and

FINAL JUDGMENT (Doc. No. 95). Because all of Plaintiff's federal claims were properly

dismissed, the Court will deny PLAINTIFF'S MOTION TO RE-OPEN AND

RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 96) (Motion).[1]

I.      Standard of Review

The rules of civil procedure allow a party to object to a court's decision through either a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e)[2] or a motion for relief from the judgment under Fed. R. Civ. P. 60(b).[3] *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991). Plaintiff's Motion was filed within twenty-eight days after entry of the MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT (Doc. No. 94) (Opinion) and FINAL JUDGMENT (Doc. No. 95) (Judgment); therefore, the Court will treat the Motion as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See Barber ex rel.*

---

[1] In ruling on the Motion, the Court has also considered RESPONSE TO PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) and CROSS MOTION TO ENJOIN FURTHER PLEADINGS BY DANIEL W. COOK (Doc. No. 97); RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 98) (Wells Fargo Response); GARRETT GROUP'S RESPONSE TO DANIEL COOK'S MOTION TO REOPEN CASE AND FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND 60(b) (Doc. No. 99) (Garrett's Reponse); REPLY TO: "PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION [SIC] UNDER Fed. R. Civ. P. 59(e) and 60(b) and CROSS MOTION TO ENJOIN FURTHER PLEADINGS BY DANIEL W. COOK" (Doc. No. 102); REPLY TO: "RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b)" (Doc. No. 103); and REPLY TO: " GARRETT GROUP'S RESPONSE TO DANIEL COOK'S MOTION TO REOPEN CASE AND FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND 60(b)" (Doc. No. 104). Plaintiff contends that Garrett's Response, filed one day after the deadline to respond to the Motion, should be disregarded or considered as consent to grant Plaintiff's Motion under D.N.M. LR-Civ. 7.1(b). Because many of the same arguments are raised by the timely-filed Wells Fargo Response, the Court will not consider Garrett's late-filed Response as consent to grant the Motion.

[2] "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

[3] "A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

*Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). A Motion under Rule 59(e) may be granted only where "the court has misapprehended the facts, a party's position, or the controlling law." *Id.* It is not appropriate to revisit issues already discussed or to advance arguments that could have been advanced in prior briefing. *Id.*

II.   Background

Since 2003, Plaintiff has been involved in several lawsuits in New Mexico state court, federal district court, and bankruptcy court against Defendant Wells Fargo Bank, NA and Defendants Scott Garrett and The Scott and Pamela Garrett Trust dated June 14, 1999 (together Garrett). In an opinion remanding an attempted removal of the state court proceeding, Chief United States District Judge Bruce Black aptly stated, the litigation "has a long and tortured history." *Garrett v. Trenchless Infrastructure Tech.*, No. 10 CV 71 BB/ACT, *Memorandum Opinion* (Doc. No. 42) at 2 (Aug. 11, 2010) (remanding case for untimely removal).

The litigation began in 2003 in the Second Judicial District Court, Bernalillo County, New Mexico and involved claims brought by Garrett against corporations and corporate subsidiaries in which Plaintiff and Garrett were shareholders. These entities were Trenchless Infrastructure Technologies, Inc. f/k/a and f/d/b/a Hydroscope Group, Inc. n/k/a and d/b/a Hydroscope Integrated Technologies, Inc. (Hydroscope); Hydroscope Canada, Inc. (HCAN); and Hydroscope Inc. USA (HUSA) (referred to collectively as the Hydroscope Entities). Garrett brought additional claims against Wells Fargo Bank N.A., Wells Fargo & Co. and Wells Fargo representative, Charles Ewing (together, Wells Fargo). Wells Fargo asserted crossclaims to

foreclose on security interests in property owned by one or more of the Hydroscope Entities.

On October 21, 2004, Plaintiff and his wife (now deceased), filed a Voluntary Petition for Chapter 11 bankruptcy protection. Bk. Case No. 04-17704-s7. On March 20, 2008, the Cook's Chapter 11 bankruptcy case was converted to a Chapter 7 bankruptcy. *See* ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7 CASE (Bk. Case. No. 04-17704-s7 Doc. No. 726).

In November 2005, Plaintiff filed a separate lawsuit against Wells Fargo in state court, and the case was consolidated with the 2003 case that had been filed by Garrett. In the consolidated case, Garrett alleged that Plaintiff had fraudulently transferred assets of HCAN to a newly formed corporation named CBM Group, Inc. (CBM).

The Honorable Second Judicial District Judge Theodore C. Baca presided over the consolidated case. On February 18, 2009, the state court granted summary judgment in favor of Wells Fargo on its foreclosure claims and on all claims against Wells Fargo. In the summary judgment order, Judge Baca noted that Wells Fargo had asserted no claims against Plaintiff as an individual, but only against the corporate entities to foreclose on property that was used to secure loans to Hydroscope guaranteed by HCAN and HUSA. Judge Baca awarded judgment of foreclosure against all property transferred to CBM from HCAN. Judge Baca dismissed all of Plaintiff's claims against Wells Fargo noting that Plaintiff as an individual, could not assert defenses belonging to the corporations.

On June 17, 2008, Garrett and others filed an adversary complaint in Plaintiff's bankruptcy case claiming that the debts owed to them were non-dischargeable under 11 U.S.C. §§ 524(a)(2), (a)(4), and (a)(6). In the adversary proceeding, Garrett claimed *inter alia* that Plaintiff fraudulently induced Garrett to purchase shares of stock in Hydroscope and that

Plaintiff, as majority shareholder in Hydroscope, breached his fiduciary duty to Garrett as a minority shareholder in Hydroscope. (Bk. Case No. 04-17704-s7, Adv. No. 08-1074-s.)

In August 2009, Plaintiff, filed an amended complaint in the consolidated state court case alleging claims against Wells Fargo. Wells Fargo moved to dismiss the lawsuit and asked the court to enjoin Plaintiff from filing additional pleadings pro se without court approval.[4] Judge Baca granted an injunction prohibiting Plaintiff from initiating additional filings unless he was represented by a licensed attorney; or with leave of the state court, if Plaintiff was pro se. Judge Baca found that Plaintiff had engaged in "a pattern of litigation activity that is abusive and vexatious."

To avoid a scheduled hearing on Wells Fargo's motion to dismiss, Plaintiff removed the case to federal district court. Chief United States District Judge Bruce Black remanded the case because Plaintiff's removal "had far less to do with obtaining federal jurisdiction than it did with avoiding state-court jurisdiction–specifically the state court's injunction and the impending hearing on the motion to dismiss." Case No. 10 CV 71, *Memorandum Opinion* (Doc. No. 42) at 6. Chief Judge Black also awarded Wells Fargo, Garrett and Garrett's attorneys, Catherine Davis, Kenneth Hunt, and Hunt & Davis, P.C. (together, Hunt & Davis), removal-related fees and expenses under 28 U.S.C. § 1447(c). Plaintiff appealed Chief Judge Black's ruling, and the Tenth Circuit Court of Appeals affirmed the ruling.

Chief Judge Black noted that Plaintiff's removal of the state court case exposed "an unfortunate reality." (*Id.*)

---

[4] The Court notes that the automatic stay in Plaintiff's bankruptcy had been annulled by the Bankruptcy Judge allowing nunc pro tunc the claims against Plaintiff. Bk. Case No. 04-17704-s7, ORDER GRANTING STAY RELIEF (DOCS 679 AND 712) AND ADDITIONAL RELIEF CONCERNING ABANDONMENT (Doc. No. 740) April 21, 2008.

> When a litigant–even, or perhaps especially, a *pro se* litigant–"engage[s] in a pattern of litigation activity that is abusive and vexatious," he exacts significant time and resources from opposing parties, who feel compelled to respond to each baseless allegation in protecting their rights.  In many cases, defendants find it less expensive to settle such cases than to respond to a determined litigant's sustained abuse.  Courts bear a responsibility in protecting against such vexatious tactics.  To that end, they may, *inter alia*, enjoin additional filing, impose sanctions, or require the payment of opposing parties' expenses.  Were Mr. Cook to remain in federal court and continue his current antics, he would likely see all three.

(*Id.* 6-7.)

On December 9, 2010 despite Chief Judge Black's admonition, Plaintiff initiated this case with a 117-page COMPLAINT (Doc. No. 1) in this Court. On January 14, 2011, Plaintiff filed his FIRST AMENDED COMPLAINT (Doc. No. 11) (First Amended Complaint), and Defendants moved to dismiss the First Amended Complaint.  In the Opinion at issue here, the Court dismissed with prejudice all of Plaintiff's federal claims under Fed. R. Civ. P. 12(b)(6). The Court also declined to exercise jurisdiction over the state law claims in the First Amended Complaint and dismissed those claims without prejudice.  Before the ruling, the Court carefully considered Plaintiff's allegations underlying the following federal claims: 1) claims against Judge Baca for alleged racial discrimination and for alleged violations of Plaintiff's civil due process rights;[5] 2) claims against Wells Fargo and Garrett for conspiring with Judge Baca to violate Plaintiff's civil rights; 3) claims against Wells Fargo and Garrett for violations of the Security and Exchange Commission's (SEC) Rule 10b-5, 17 CFR § 240b-5; and 4) claims against Wells Fargo and Garrett for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b), (c), (d). The Court determined that Plaintiff

---

[5] The Court previously dismissed the claims against Judge Baca alleged in the First Amended Complaint based on Judge Baca's immunity from suit. *MEMORANDUM OPINION AND ORDER* (Doc. No. 55) at 5 (stating that judges are entitled to immunity from civil actions based on judicial acts within their jurisdiction). The ruling is not at issue here.

failed to support his assertion that Defendants discriminated against him or conspired to discriminate against him on the basis of his Caucasian race; thus, the Court dismissed with prejudice Counts I-VI of the First Amended Complaint. The Court also found that Plaintiff failed to allege facts to support the claim that Wells Fargo or Garrett made fraudulent statements or misrepresentations in connection with the purchase or sale of securities, and the Court dismissed with prejudice Count VII of the First Amended Complaint asserting violation of SEC Rule 10b-5.  Finally, the Court dismissed Counts X-XIII because Plaintiff's claims under RICO failed as a matter of law.  The Court concluded that Plaintiff failed to allege facts showing that Wells Fargo and Garrett acted as an "enterprise" or that Wells Fargo and Garrett engaged in "racketeering activity" as defined in the RICO statute.

In his Motion, Plaintiff asks the Court to set aside the dismissal of his federal claims because the Court "overlooked facts that support [Plaintiff's] federal claims." (Mot. 9.) Alternatively, Plaintiff asks the Court to set aside the dismissal with prejudice and allow Plaintiff to file yet another amended complaint to correct any factual deficiencies and to "prevent manifest injustice." (*Id.* 9.)

III.    Discussion

      A. The Court properly dismissed all federal claims asserted in Counts I-VI.

Plaintiff first argues that in addition to the three types of federal claims and the assortment of state-law claims, he also "intended to and believed he had asserted independent and alternative violations of his U.S. Constitutional Rights as those are granted under the 1st, 4th, 6 [sic], and 14th Amendments." (Mot. 4.) Plaintiff's First Amendment claim is discussed in part III B. this opinion.  The Fourth Amendment protects citizens from unreasonable searches and

seizures by governmental officials, and this provision is not applicable in this case.[6] The Sixth Amendment applies only to criminal prosecutions and is not applicable in this case.[7]

The Fourteenth Amendment protects civil due process rights and mandates equal protection of law.[8] The Court correctly ruled that Plaintiff did not state a legally cognizable claim that Defendants, particularly Judge Baca as an Hispanic, discriminated against Plaintiff on the basis of his Caucasian race.  In the Motion, Plaintiff asserts that in Counts I-III, he intended to ask for alternative relief for violations of his Constitutional rights not based on racial discrimination alone. Plaintiff argues that the Court's failure to address other forms of discrimination "provides grounds for reopening the case and giving Cook an opportunity to amend his complaint." (Mot. 5.)  Plaintiff argues that he intended to assert that Defendants were guilty of class-based violations of Plaintiff's right to contract, right to a fair hearing, right to fair

---

[6] The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. am. IV.

[7] The Sixth Amendment provides,

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. am. VI.

[8] The Fourteenth Amendment mandates that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

notice, right to present evidence, and right to question accusers and Plaintiff's "civil rights granted him under the First and Fourteenth Amendments." (Mot. 11.)  Plaintiff asserts that the Court overlooked consideration of ". . . Plaintiff's minority group status in New Mexico and as a member of a class discriminated against." (*Id.* 11-12.)  Plaintiff then argues, "Plaintiff sincerely believes the unwarranted invidiously discriminatory animus by Judge Baca against Plaintiff, some of which is documented in the Court's files and not considered, was not only based on Plaintiff being a minority in New Mexico, a bankrupt class and or a *pro se* litigant class, class of one, but was also partially race based." (*Id.*) Plaintiff continues, "Judge Baca, in his official capacity, has displayed a deep discriminatory anger against Plaintiff, a bankrupt class, a forced class of *pro se* litigants, as a Caucasian minority class in New Mexico, and has violated Plaintiff's due process rights." (*Id.* 12.)  However, the federal statutes under which Plaintiff asserted claims do not allow Plaintiff's class-based discrimination claims.

In Count I, Plaintiff asserted claims against Defendants under 42 U.S.C. § 1981, which provides,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> . . .
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a) and (c). Section 1981 applies only to discrimination on the basis of race or ethnic characteristics. *Tafoya v. Bobroff*, 865 F. Supp. 2d 742, 752 (D. N.M. 1994) (citing, *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 609–10 *reh'g denied*, 483 U.S. 1011 (1987) (holding that section 1981 protects persons subjected to discrimination solely because of their

ancestry or ethnic characteristics). The Court properly dismissed Plaintiff's claims in Count I because Plaintiff made conclusory allegations that Judge Baca ruled against Plaintiff and imposed a filing restriction on Plaintiff only because Judge Baca is Hispanic and Plaintiff is Caucasian. The Court correctly determined that this type of allegation fails to state a claim as a matter of law, and the Court will not set aside that determination. Count I was properly dismissed.

In Count II, Plaintiff asserts a claim under 42 U.S.C. § 1982 alleging that Defendants Judge Baca, Wells Fargo, Garrett, Ms. Knipps, Mr. Hertz, Ms. Ostrye, Ms. Vargas and Ms. Davis, "all associated-in-fact, sought to and did impair the equal civil rights of Plaintiff to file suit, to protect property interest[s] and to enjoy his liberty interests." (First Am. Compl. ¶ 311.)

Section 1982 provides,

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982. Section 1982, like § 1981, "deals only with racial discrimination . . ." *Trujillo v. Board of Educ. of Albuquerque Public Schools*, No. 02 CV 1509 JB/RLP, 2006 WL 4079033, *2 (D. N.M. June 9, 2006) (citing, *Jones v. Alfred H. Meyer Co.*, 392 U.S. 409, 413 (1968)). Thus, the Court properly dismissed Count II for failure to state a claim.

In Count III, Plaintiff asserts a claim under 42 U.S.C. § 1983 alleging that "Defendants have denied Plaintiff his federal rights to notice, a fair hearing, a right of participation and a right to protect his property, acting under color of state law." Also in Count III, Plaintiff asserts a claim that "Defendant's actions deprived Plaintiff of his rights in violation of [42 U.S.C. § 1985(1-3) . . . ." (First Am. Compl. ¶331.)  Under 42 U.S.C. § 1983, Plaintiff must allege "(1) a violation of rights protected by the federal Constitution or created by federal statute or

regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). Plaintiff cannot assert a § 1983 claim against Judge Baca because although he is a state actor, Judge Baca is entitled to judicial immunity in his individual capacity, and he is entitled to Eleventh Amendment immunity in his official capacity. *Martinez v. Martinez,* No. 09 CV 0281 JB/KBM, 2010 WL 1608884, *26 (D. N.M. Mar. 30, 2010) (citation omitted) (dismissing claims brought by claimant against opposing party, opposing party's attorney and judge in state divorce case).

Regarding the other Defendants, Plaintiff's claims are barred because the Defendants were not acting under color of state law when they engaged in the actions of which Plaintiff complains. Mr. Hertz, Ms. Ostrye, Ms. Vargas and Ms. Davis represented Wells Fargo and Garrett, the opposing parties in the cases involving Plaintiff. Wells Fargo, Wells Fargo's representative Ms. Knipps, and Garrett were acting as litigants. *See Id.* * 26 (dismissing § 1983 claims against attorneys and litigants because they were not acting under color of law in state court case). *See Shaffer v. Cook*, 634 F.2d 1259, 1261 (10th Cir. 1980) (stating that lawyers do not act under color of state law solely by engaging in private litigation on behalf of their clients) (quotation omitted). Thus, Count III was properly dismissed.

In Count IV, Plaintiff asserts a claim under 42 U.S.C. § 1985(1-3). In the Motion, however, Plaintiff recognizes that he should have limited his claim to subsection (3) of 1985. Under this provision, a claimant must show: (1) a conspiracy, motivated by discriminatory animus; (2) to deprive the claimant of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Id.* (citation omitted) The Tenth Circuit has recognized that the intent of § 1985 was to "provide redress for victims of

conspiracies impelled by a commingling of racial and political motives." *Id.* (citing, *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)). The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial discriminatory animus. *Id.* (citing, *Paris v. SW Bell Tel. Co.*, 94 Fed. App'x 810, 815-816 (10th Cir. 2004) (upholding dismissal of § 1985(3) claim because plaintiff "presented no evidence showing that Caucasian employees who were similarly situated were treated more favorably than she was treated."). Therefore, as a matter of law, Plaintiff cannot bring the claims in Counts I-IV for "class-based" discrimination due to Plaintiff's membership in a class of bankruptcy debtors or *pro se* litigants, and Counts I-IV were properly dismissed.

In Count V, Plaintiff asserts a claim under 42 U.S.C. § 1986, which imposes liability on all persons who have the power to prevent and do not prevent "any of the wrongs conspired to be done, and mentioned in section 1985 of this title, . . . ." 42 U.S.C. § 1986. Because Plaintiff fails to state a claim under § 1985 (3), Count V was also properly dismissed.

Plaintiff admits that the claim asserted in Count VI was properly dismissed. In sum, Plaintiff has failed to show that the Court should set aside its dismissal of Counts I-VI.

> B. The Court's background description was not prejudicial and the state court filing injunction did not violate Plaintiff's First Amendment rights.

Plaintiff next asserts that the Court failed to recognize in its background description that even before the filing injunction entered in state court, "Judge Baca . . . had already denied Cook any participation right in the state court proceedings as a named defendant to defend his property interest, and how Cook individually had never brought any claims in state court." (Mot. 2.) Plaintiff further contends that the Court's background recitation "appears one-sided and prejudicial to Cook as it does not also note how Cook was discriminated against and denied his

12

'right' under "the 1st Amendment to petition– and needless to say, the complaint Cook filed was dismissed at a subsequent hearing on April 28, 2011, cited to here as 'NEW EVIDENCE' for the continued denial of rights." (Mot. 3.) Even if the Court were to consider these allegations as true, all claims against Judge Baca were properly dismissed under the doctrine of judicial immunity. In addition, adverse judicial rulings, including rulings that a litigant lacks standing to assert his claims or rulings that impose filing restrictions, do not as a matter of law violate a litigant's First Amendment right to petition for redress of grievances.[9] A litigant may gain relief from an adverse judicial ruling by appeal, not by initiating a federal lawsuit.

Plaintiff refers to a transcript of a hearing in state court, a copy of which is attached as Exhibit A to DEFENDANTS SCOTT GARRETT'S, SCOTT and PAMELA GARRETT TRUST'S, BID GROUP, INC.'S, GARRETT CAPITAL, LLC'S, JULIE J. VARGAS', CATHERINE F. DAVIS', HUNT & DAVIS, P.C.'S MOTION TO DISMISS DANIEL COOK'S FIRST AMENDED COMPLAINT FOR LACK OF JURISDICTION WITH CONSOLIDATED BRIEF IN SUPPORT (Doc. No. 52) (Garrett's Motion to Dismiss). The hearing before Judge Baca was held on October 14, 2009 on Wells Fargo's and Garrett's Application for a Temporary Restraining Order and Preliminary and Permanent Injunction in the *Garrett v. Trenchless Infrastructure Tech.* case. Plaintiff appears to argue that the injunction

---

[9] The First Amendment protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances. The Amendment provides,

> Congress shall make no law . . . abridging the . . .the right of the people peaceably to . . . petition the government for a redress of grievances.

U.S. Const. am. 1. The right of access to the courts is one aspect of the right of petition. *Martin v. City of Del City*, 179 F.3d 882, 887 (10th Cir. 1999)(citation omitted).

granted by Judge Baca is evidence that his civil rights were denied by Defendants who participated in that case and by Judge Baca.

Wells Fargo and Garrett asked for a temporary restraining order and preliminary and permanent injunctions against Plaintiff for oppressive and vexatious filings. (Tr. 2: 16-18; 4:2-6.) Wells Fargo and Garrett sought to address Plaintiff's repeated filing of new lawsuits on the same issues after adverse rulings. At the hearing, Judge Baca listened to the arguments of Wells Fargo's counsel Michelle Ostrye, and Garrett's counsel Julie Vargas and Plaintiff's own arguments in opposition. Judge Baca then granted the injunction. The injunction, as a matter of law, does not violate Plaintiff's due process rights or his right to petition for redress under the First Amendment. The injunction does not deny access to the courts but requires Plaintiff to submit an affidavit with any future pro se filing that (1) outlines the issues that Plaintiff seeks to present, (2) contains a short statement of the legal basis for the relief sought, and (3) affirms that the claims or contentions have not been disposed of on the merits in any court. (Tr. 26:24 – 27:8.) Under Fed. R. Civ. P. 11, attorneys make the same representations when they sign

pleadings on behalf of their clients. Fed. R. Civ. P. 11.[10] As a matter of law, the filing injunction does not deny Plaintiff access to the courts, and Judge Baca acted within his jurisdiction. Plaintiff has no legally recognized claim that the injunction violated his civil rights. *See Lepiscopo v. Hopwood,* 791 P.2d 481, 483 (N.M. Ct. App. 1990) (stating, "[w]here litigant has history of filing meritless, vexatious law suits, and where that pattern unduly burdens judicial system, courts can constitutionally restrict litigant's access to courts.").

        C.        Chief Judge Black's opinion.

Plaintiff next contends that the Court's description of the basis for remand of the *Garrett v. Trenchless Infrastructure Tech.*, No. 10 CV 71 BB/ACT case was incomplete and created an unfavorable impression of Plaintiff's arguments both at the district court and at the appellate

---

[10] Rule 11 provides,

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

court level. The Court recognizes that Chief Judge Black remanded because the removal of the state court case was untimely, and the Tenth Circuit Court of Appeals affirmed Chief Judge Black's ruling on that basis. The Court referred to Chief Judge Black's Memorandum Opinion in the *Garrett v. Trenchless Infrastructure Tech.* case to clarify the procedural and substantive posture of the state court litigation, the state court summary judgment in favor of Wells Fargo, and the injunctive relief granted by Judge Baca to provide a context for considering Plaintiff's claims asserted in the First Amended Complaint. In its Opinion, the Court determined the legal validity of Plaintiff's claims under the requirements of the Federal Rules and under federal statutory and case law. Thus, Plaintiff's argument– that the Court in its Opinion did not fully recite Chief Judge Black's statement of the basis for remanding the case before him-- fails to support reconsideration of the Opinion and Judgment.

        D.     Plaintiff's SEC Rule 10b-5 claim was properly dismissed.

Plaintiff next argues that the Court erred in dismissing Plaintiff's claim in Count VII that Wells Fargo and Garrett violated SEC Rule 10b-5, codified in 17 CFR § 240b-5. The Court properly dismissed Count VII because Plaintiff failed to allege that any of Defendants' actions were taken in connection with the purchase or sale of securities. Plaintiff asks the Court to reconsider several allegations in the First Amended Complaint and to find them sufficient to state a claim under SEC Rule 10b-5. For example, Plaintiff alleged that Wells Fargo interfered with the business of Hydroscope Group by asserting a security interest in shares of stock of that entity. (*See also* First Am. Compl. ¶ 401.) As a matter of law, asserting a security interest in securities is not a violation of SEC Rule 10b-5. *In re Whitaker*, 18 B.R. 314, 316 (Bankr. Kan. 1982) (enforcing security interest in stock). Plaintiff further alleged that Garrett interfered with the business of Hydroscope Group "in making false claims of interest in securities" and that

16

Garrett interfered with "Group's business activities and completion of CMB's merger into Galtech as a public entity." (First Am. Compl. ¶¶ 422-426.) Plaintiff alleged that Wells Fargo and Garrett "sought to hinder CBM from obtaining additional capital as a public entity for itself through the merger with Galtech, which plans were publicly disclosed and made in filing with the SEC." (*Id.* ¶ 425.) Through these allegations, Plaintiff attempts to characterize certain claims that Wells Fargo and Garrett made in state court and bankruptcy court as violations of SEC Rule 10b-5. Plaintiff then summarily alleges that "the manipulations and deceptions by the Bank, Trust and Scott Garrett have been in connection with the purchase or sale of securities." (*Id.* ¶ 461.) None of the allegations in the Count VII of the First Amended Complaint ¶¶ 383-469 state a legally valid claim under SEC Rule 10b-5. Plaintiff lacks standing to bring this claim without allegations that he *personally* purchased or sold shares of stock as a result of alleged actions, manipulations and deceptions by Wells Fargo and Garrett. Under the rule announced in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir.), cert. denied, 343 U.S. 956 (1952), claims for violations of SEC Rule 10b-5 may be brought only by " the defrauded purchaser or seller." *Id.* at 464. The court in *Birnbaum* upheld the dismissal of a lawsuit brought by shareholders alleging breach of fiduciary duty by a corporate insider because although the claimants were shareholders, they were not buyers or sellers. *Id.* The United States Supreme Court adopted the *Birnbaum* rule in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). Because Plaintiff did not allege that he personally purchased or sold shares of stock as a result of alleged actions of Defendants, Count VII was properly dismissed.

      E.     Plaintiff's RICO claims were properly dismissed.

The Court dismissed Plaintiff's claims brought under RICO because Plaintiff failed to allege that Defendants were involved in an "enterprise" and that Defendants engaged in

"racketeering activity" within the meaning of the RICO statute. Plaintiff argues that Wells Fargo and Garrett combined their common interests in violation of RICO by pursuing common interests in bankruptcy court and in state court. The purpose of the alleged enterprise was to foreclose on certain intellectual property, to destroy claims, and to collect an allegedly unlawful debt. Under some circumstances, collecting an unlawful debt is a violation of RICO. *Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988). However, nothing alleged in the Complaint or contained in the record suggests that Wells Fargo or Garrett attempted to collect on unlawful debts. Moreover, the allegations that these Defendants engaged in bankruptcy fraud is an issue for the bankruptcy court to determine under Title 11.[11] In addition, whether Plaintiff owns claims purportedly abandoned by the Chapter 7 bankruptcy trustee must be decided by the bankruptcy court. Therefore, as a matter of law, the allegations in Plaintiff's First Amended Complaint are insufficient to state claims under RICO, and Plaintiff's RICO claims were properly dismissed. *See generally Advanced Optics Electronics, Inc. v. Robins*, 633 F. Supp. 2d 1237, 1253-54 (D. N.M. 2008) (dismissing RICO claims).

The Court dismissed Plaintiff's claims with prejudice finding that it would be futile to allow Plaintiff to further amend his First Amended Complaint. The Court made this determination because Plaintiff's voluminous factual allegations were primarily descriptions of events that had been litigated in other courts. These allegations, even if augmented by an amendment, fail to state legally cognizable federal claims. As a matter of law, any perceived unfairness endured by Plaintiff in previous or ongoing litigation cannot be the basis for civil

---

[11] For example, Plaintiff alleged that Wells Fargo, Garrett and Bankruptcy Trustee Linda Bloom, conspired to commit fraud on Plaintiff and the creditors of Plaintiff's bankruptcy estate for "individual and shared gain." (First Am. Compl. ¶ 93.) This alleged fraud was carried out in "filing made in the Bk. Ct. on February 14, 2007 (Doc 503)." (*Id.* ¶ 94.)

rights claims in this Court, and the Court properly dismissed all of Plaintiff's federal claims with prejudice.

  IT IS ORDERED that the PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 96) is denied.

                */s/ James A. Parker*
                SENIOR UNITED STATES DISTRICT JUDGE