IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANIEL W. COOK, individually,**

    Plaintiff,

vs.                                         No. 10-CV-1173 JP/KBM

**THE HONORABLE THEODORE C. BACA,**
**individually and in his official capacity;**
**WELLS FARGO BANK, N.A.;**
**WELLS FARGO & COMPANY, N.A.;**
**JAY D. HERTZ, ESQ.**
**and MICHELLE K. OSTRYE, ESQ.,**
**both individually and as counsels for Wells Fargo Bank, N.A. and**
**Wells Fargo & Company, N.A.;**
**PENNY T. KNIPPS, individually**
**and in her capacity as a V.P. of Wells Fargo Bank, N.A.;**
**SUTIN, THAYER, BROWNE, P.C.; SCOTT GARRETT individually;**
**THE SCOTT AND PAMELA GARRETT TRUST dated June 14, 1999;**
**BID GROUP, INC.; GARRETT CAPITAL, LLC;**
**JULIE VARGAS, ESQ. and**
**CATHERINE DAVIS, ESQ., both counsels for Scott Garrett,**
**the Garrett Trust, Garrett Capital, LLC, and Bid Group, Inc.;**
**HUNT & DAVIS, P.C.; JOHN DOE and/or JANE DOE,**

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND PETITION (Doc. No. 101)**

Because the Court denied PLAINTIFF'S MOTION TO RE-OPEN AND

RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 96) (Motion to

Reopen), and because the Court finds that an amended complaint would be dismissed, the Court

will deny Plaintiff's MOTION FOR LEAVE TO AMEND PETITION (Doc. No. 101) (Motion

1

to Amend).[1]

    I.    Background

On December 9, 2010, Plaintiff pro se filed a 117-page COMPLAINT (Doc. No. 1). After Defendants filed a motion to dismiss, Plaintiff filed his FIRST AMENDED COMPLAINT (Doc. No. 11) (First Amended Complaint). Again, Defendants moved to dismiss the First Amended Complaint. The Court dismissed with prejudice all federal claims in Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). In addition, the Court declined to exercise jurisdiction over the state law claims in the First Amended Complaint and dismissed those claims without prejudice. The Court has denied the Motion to Reopen. *See* MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 122) (Memorandum Opinion).

    II.    Standard of Review

After a motion to dismiss under Rule 12(b) has been filed, a party may amend its pleading, ". . . only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "[t]he court should freely give leave when justice so requires." *Id.* "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is

---

[1] In ruling on the Motion, the Court has also considered GARRETT GROUP'S RESPONSE TO MOTION FOR LEAVE TO AMEND PETITION (Doc. No. 109) filed on September 14, 2011, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PETITION (Doc. No. 101) filed on September 14, 2011 (Doc. No. 110), and REPLY TO WELLS FARGO DEFENDANTS': "RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PETITION (Doc. No. 101)" (Doc. No. 110) AND REPLY TO: "GARRETT GROUP'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND PETITION (Doc. No. 109) filed on October 3, 2011 (Doc. No. 118).

futile if the complaint, as amended, would be subject to dismissal.*" Jefferson County Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  Because Plaintiff's proposed Second Amended Complaint (Proposed Amended Complaint) would be dismissed under Fed. R. Civ. P. 12(b)(6), the amendment is futile.  Hence, the Court will deny Plaintiff's Motion to Amend.

III. Discussion

Since 2003, Plaintiff has been involved with Defendants in several lawsuits in New Mexico state court, in federal district court, and in bankruptcy court. The litigation began in the Second Judicial District Court, Bernalillo County, New Mexico (Second Judicial District Court) and involved claims brought by Scott Garrett, Pamela Garrett, Trustees of the Scott Garrett and Pamela Garrett Family Trust, and Garrett Capital, LLC (together, Garrett) against Plaintiff and several corporations in which Plaintiff is a shareholder.  These entities are Trenchless Infrastructure Technologies, Inc. f/k/a and f/d/b/a Hydroscope Group, Inc. n/k/a and d/b/a Hydroscope Integrated Technologies, Inc. (Hydroscope); Hydroscope Canada, Inc. (HCAN); and Hydroscope Inc. USA (HUSA) (together, Hydroscope Entities).  Garrett brought additional claims against Wells Fargo Bank NA, Wells Fargo & Co., and a Wells Fargo representative, Charles Ewing (together, Wells Fargo). Wells Fargo asserted crossclaims to foreclose a security interest against property owned by one or more of the Hydroscope Entities.

On October 21, 2004, Plaintiff and his wife (now deceased), filed a Voluntary Petition for Chapter 11 bankruptcy protection.  Bankr. D.N.M. Case No. 04-17704-s7. On March 20, 2008, the Cook's Chapter 11 bankruptcy case was converted to a Chapter 7 bankruptcy. *See* ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7 CASE (Bk. Case. No. 04-17704-s7,  Doc. No. 726). Garrett and others brought an adversary proceeding against Plaintiff in

Plaintiff's bankruptcy case claiming that the debts owed to them were non-dischargeable under 11 U.S.C. §§ 524(a)(2), (a)(4), and (a)(6). In the adversary proceeding, Garrett claimed that Plaintiff fraudulently induced Garrett to purchase stock in Hydroscope and that Plaintiff, the majority shareholder, breached his fiduciary duty to Garrett, a minority shareholder.

In November 2005, Plaintiff sued Wells Fargo in the Second Judicial District Court, and the case was consolidated with the case brought by Garrett. In the consolidated case, Garrett alleged that Plaintiff had fraudulently transferred assets owned by HCAN to a newly-formed corporation, CBM Group, Inc. (CBM) a corporation formed by Plaintiff.

In 2009, the Honorable Second Judicial District Judge Theodore C. Baca granted summary judgment in favor of Wells Fargo on its foreclosure claims against the Hydroscope Entities and CBM and granted summary judgment in favor of Wells Fargo on all claims against it. Noting that Wells Fargo had asserted no claims against Plaintiff individually, Judge Baca dismissed all of Plaintiff's claims against Wells Fargo because Plaintiff, as an individual, could not assert a defense belonging to the corporations.

Soon thereafter, Plaintiff filed an amended complaint in the consolidated case alleging claims against Wells Fargo. Wells Fargo asked that court to enjoin Plaintiff from filing additional pleadings pro se without court approval. Judge Baca granted an injunction prohibiting Plaintiff from filing pleadings or documents in state court unless he was represented by a licensed attorney. If Plaintiff attempted to file a pleading pro se, the injunction required Plaintiff to obtain leave of the state court. Judge Baca based the injunction on a finding that Plaintiff had engaged in a pattern of abusive and vexatious litigation activity.

In the Memorandum Opinion, the Court dismissed with prejudice all of Plaintiff's federal claims under Fed. R. Civ. P. 12(b)(6). The Court also declined to exercise jurisdiction over the

state law claims in the First Amended Complaint and dismissed those claims without prejudice. On August 5, 2011, Plaintiff filed the Motion to Reopen, which the Court denied in the Memorandum Opinion (Doc. No. 122). Since the Court has denied the Motion to Reopen, the Motion to Amend is moot.

However, even if the Motion to Amend were not moot, the Court would deny the Motion to Amend because it would be futile to allow Plaintiff to further amend his First Amended Complaint. After a careful review of Plaintiff's Proposed Amended Complaint, including Plaintiff's Notice of Errata, Correction and Substitution of Document (Doc. No. 113) and Notice of Errata and Correction (Doc. No. 114), the Court finds that further amendment would be futile because either the Court lacks jurisdiction over Plaintiff's claims or the Court would dismiss Plaintiff's claims as a matter of law under Fed. R. Civ. P. 12(b)(6).

In Count I of the Proposed Amended Complaint, Plaintiff asserts a claim that Judge Baca violated Plaintiff's civil due process rights in his rulings, including the judgment of foreclosure. The judgment of foreclosure was against Hydroscope, HCAN, HUSA, and CBM. However, Judge Baca also dismissed with prejudice all claims asserted by Garrett and Plaintiff against Wells Fargo. In the Proposed Amended Complaint, Plaintiff asks the Court to enter an order declaring that the State of New Mexico, through Judge Baca, violated Plaintiff's civil rights, and Plaintiff asks for an order declaring that all of the state court's orders are void and unenforceable. Plaintiff also asks for an award of attorney's fees and costs for past legal representation and for any legal representation fees and costs that Plaintiff might incur in the future. Because the judgment of foreclosure was against the Hydroscope Entities and CBM, only those entities have standing to attack the judgment.

In the Opinion dismissing Plaintiff's federal claims, the Court declined to address its jurisdiction to set aside state court rulings because Plaintiff maintained that he was not seeking relief from judgments or orders entered in the state court. In the Proposed Amended Complaint, however, Plaintiff asks for an order declaring certain state court orders void.  Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to review or set aside final orders entered by state courts.[2]  The Tenth Circuit Court of Appeals has recognized that the "*Rooker–Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."  *FDIC v. Harger*, 778 F. Supp. 2d 1123, 1134 (D. N.M. 2011) (quoting, *Bolden v. City of Topeka, Kan*., 441 F.3d 1129, 1139 (10th Cir. 2006)).  In sum, the Court would not have jurisdiction to grant the relief Plaintiff seeks in the Proposed Amended Complaint.  In addition, Plaintiff's request for an order declaring that the State of New Mexico, through Judge Baca, violated his civil rights is not a plausible claim for relief because Judge Baca is immune from suits against him in cases over which he exercises jurisdiction.[3]  Therefore, Count I of the Proposed Amended Complaint would be dismissed.

---

[2] The *Rooker–Feldman* doctrine takes its name from two cases in which the United States Supreme Court found that a federal district court lacked jurisdiction to review state court judgments. In *Rooker,* a party who had lost in the Indiana Supreme Court, and failed to obtain review in the United States Supreme Court, filed an action in Federal District Court challenging the constitutionality of the state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  The United States Supreme Court determined that the federal action was tantamount to an appeal of the Indiana Supreme Court decision, and held that the "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Id.* at 416. *Feldman,* decided 60 years later, concerned slightly different circumstances, with similar results. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In *Feldman*, the plaintiffs had been denied admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of the decisions in Federal District Court. The United States Supreme Court held that to the extent plaintiffs challenged the Court of Appeals decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with the United States Supreme Court. 460 U.S. at 476.

[3] *See  Martinez v. Martinez,* No. 09 CV 0281 JB/KBM, 2010 WL 1608884, *26 (D. N.M. Mar. 30, 2010) (dismissing claims brought by claimant against judge who presided over claimant's divorce case).

In Count II of the Proposed Amended Complaint, Plaintiff again asks the Court to declare that the state court violated his civil rights and to set aside orders made by the state court that Plaintiff contends violated his civil due process rights.  Specifically, Plaintiff asks the Court to grant "relief from all orders . . . from February 18, 2009 through May 20, 2011 except a record correction order."  (Prop. Am. Compl. at 33.)  Count II of the Proposed Amended Complaint would be dismissed for the same reasons that Count I would be dismissed, the *Rooker-Feldman* doctrine and judicial immunity.

In Count III of the Proposed Amended Complaint, Plaintiff asserts a claim under 42 U.S.C. §§ 1983 and 1985 (3) alleging that Wells Fargo and its attorneys along with Garrett and its attorneys conspired with Judge Baca to violate Plaintiff's civil due process rights under the First, Thirteenth and Fourteenth Amendments of the United States Constitution.[4]  Under § 1983, a claimant may sue only a person acting under color of state law. As discussed above, even though Judge Baca was acting under color of state law, Judge Baca is immune from suit. In

---

[4] The First Amendment protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances, and states that

> Congress shall make no law . . . abridging the . . .the right of the people peaceably to . . . petition the government for a redress of grievances.

U.S. Const. am. 1. The First Amendment *inter alia* protects a person's access to the courts.

Section One of the Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction ." U.S. Const. amend XIII, § 1. Section Two of the amendment then provides that "Congress shall have power to enforce this article by appropriate legislation." *Id.* § 2.

The Fourteenth Amendment mandates that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

addition, Wells Fargo, Garrett and their attorneys were not acting under color of state law by litigating claims and representing clients in state court. *See Shaffer v. Cook*, 634 F.2d 1259, 1261 (10th Cir. 1980) (stating that lawyers do not act under color of state law solely by engaging in private litigation on behalf of their clients).

Section 1985(3) was enacted to "provide redress for victims of conspiracies impelled by a commingling of racial and political motives." *Id.* (citing, *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)). The Tenth Circuit Court of Appeals has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus. *Id.* (citing, *Paris v. SW Bell Tel. Co.*, 94 Fed. App'x 810, 815-816 (10th Cir. 2004) (upholding dismissal of § 1985(3) claim because plaintiff "presented no evidence showing that Caucasian employees who were similarly situated were treated more favorably than she was treated.")). As the Court determined in its Opinion dismissing Plaintiff's federal claims, Plaintiff has failed to allege a legally cognizable claim for racial or class-based discrimination.  Thus, Count III would be dismissed for lack of jurisdiction or for failure to state a claim.

In Count IV of the Proposed Amended Complaint, Plaintiff asserts a claim that Wells Fargo and its attorneys and Garrett and its attorneys violated Plaintiff's civil rights by failing to prevent the violations asserted in Counts I-III of the Proposed Amended Complaint.  Because the first three courts fail as a matter of law, so does Count IV.

In Counts V and VI of the Proposed Amended Complaint, Plaintiff claims that Wells Fargo and Garrett violated SEC Rule 10b-5.[5]  After a careful review of the allegations in Counts V and VI (*see* Prop. Am. Compl. ¶¶ 396-510), the Court concludes that these claims fail because

---

[5] Rule 10b-5 makes it unlawful for any person "to employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

none of the purported fraudulent behavior by Wells Fargo or Garrett was done in connection with the purchase or sale of securities.  In Count V, Plaintiff states,

> [T]he Bank's fraudulent claims of a security interest in the alleged controlling shares of [Hydroscope] Group [Inc.], unwarranted objections to the Cook's claimed exemption in those shares [from creditors in bankruptcy], the fraudulent assertions that the Cooks had no right to protect their property interest in state court proceedings, the false and or (sic) misleading statements made to keep [Hydroscope] Group [Inc.] from delivering sold shares to Enterprise Group [LLC], and the misleading statements by Scott Garrett individually or through the Trust, all have been the proximate cause of the Bank being able to obtain a final order entered on May 20, 2011 dismissing with prejudice [Hydroscope] Group [Inc.]'s pre-petition claims against the Bank while ownership was still being litigated . . . .

(Prop. Am. Compl. ¶ 428.)  The final order entered on May 20, 2011, was a state court order dismissing claims brought by Plaintiff on behalf of Hydroscope against Wells Fargo.  As illustrated by the quoted statement, Plaintiff's securities fraud claims are based on Wells Fargo's and Garrett's actions as litigants in state court and in Plaintiff's bankruptcy case and are not actionable as violations of SEC Rule 10b-5.  In Count VI, Plaintiff alleges that Wells Fargo and Garrett interfered with Plaintiff's attempted transfer of all of the shares of CBM to an entity named Galtech Semiconductor Materials Corporation (Galtech).  Wells Fargo and Garrett purportedly interfered with this transfer by filing a joint motion for a temporary restraining order and preliminary and permanent injunction in the state court proceeding.  (Prop. Am. Compl. ¶¶ 439-450.) Wells Fargo subsequently asserted a security interest in the assets of CBM and opposed in bankruptcy court Plaintiff's claimed exemption in CBM shares of stock.

   Although the Bank's actions may have had an indirect effect on shares of stock held by Plaintiff or belonging to Plaintiff's bankruptcy estate, Counts V and VI do not state a plausible claim under SEC Rule 10b-5 because none of the actions of which Plaintiff complains were taken in connection with the purchase of sale of securities as required to state a claim under SEC Rule 10b-5.

Under the rule announced in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir.), cert. denied, 343 U.S. 956 (1952), and adopted by the United States Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), violations of SEC Rule 10b-5 may be brought only by " the defrauded purchaser or seller." 193 F.2d at 463. Plaintiff alleges that the *Birnbaum* rule is not an impediment to Counts V and VI because "CBM's interests in the sale of all it (sic) shares was a matter of an executed contract with Galtech approved by all shareholders." (Prop. Am. Compl. ¶ 499.)  Although a purchase or sale that is subject to Rule 10b-5 includes a contract for the purchase or sale of securities,[6] Plaintiff has failed to allege that Wells Fargo's and Garrett's actions were taken in connection with the contract to sell shares of CBM to Galtech.  In sum, nothing in Counts V and VI can be construed as a claim that Plaintiff himself purchased or sold shares of stock in reliance on misrepresentations of material facts by either Wells Fargo or Garrett.  Wells Fargo's and Garrett's actions in state court and bankruptcy court were legitimate legal actions and any indirect effect on purported sales of securities cannot be pursued as a violation of SEC Rule 10b-5.  Thus, Counts V and VI of the Proposed Amended Complaint  would be dismissed. *See generally,* 59C Fletcher Cyclopedia § 6866, Pleading Securities Fraud (2011). [7]

The remaining claims in the Proposed Amended Complaint are claims under state contract and tort law, and the Court would dismiss without prejudice those claims under 28 U.S.C. § 1367(c)(3).  Because all of the federal and state claims in the Proposed Amended

---

[6] *See Technology Exchange of America, Inc. v. Grant County State Bank*, 646 F. Supp. 179, 183 (D. Colo. 1986) (stating that purchase or sale under Rule 10b-5 includes a contract for the purchase or sale of securities).

[7] Although Plaintiff asserted claims under RICO in the First Amended Complaint, Plaintiff has omitted these claims from the Proposed Amended Complaint.

Complaint would be dismissed, the Motion to Amend will be denied.

IT IS ORDERED that the MOTION FOR LEAVE TO AMEND PETITION (Doc. No. 101) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE