IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL W. COOK, individually,

      **Plaintiff,**

vs.

                                            **No. 10 CV 1173 JP/KBM**

THE HONORABLE THEODORE C. BACA,
individually and in his official capacity; WELLS
FARGO BANK, N.A.; WELLS FARGO & COMPANY;
JAY D. HERTZ, ESQ. and MICHELLE K. OSTRYE, ESQ.,
both individually and as counsels for Wells Fargo Bank, N.A.
and Wells Fargo & Company, N.A.; PENNY T. KNIPPS,
individually and in her capacity as a V.P. of Wells Fargo Bank,
N.A.; SUTIN, THAYER BROWNE, P.C.; SCOTT GARRETT
individually; THE SCOTT AND PAMELA GARRETT TRUST
dated June 14, 1999; BID GROUP, INC.; GARRETT CAPITAL,
LLC; JULIE VARGAS, ESQ. and CATHERINE DAVIS, ESQ.,
both counsels for Scott Garrett, the Garrett Trust, Garrett Capital,
LLC, and Bid Group, Inc.; HUNT & DAVIS, P.C.; JOHN DOE
and/or JANE DOE,

      **Defendants.**

**Consolidated with**

DANIEL W. COOK,

      **Plaintiff,**

vs.                                             **No. 13 CV 669 JP/KBM**

WELLS FARGO BANK, N.A., SCOTT AND PAMELA JANE
GARRETT TRUST, BID GROUP, INC., SCOTT GARRETT
and  PAMELA JANE GARRETT, individually and as trustees
of the Trust, and SCOTT GARRETT, as an officer of BID
GROUP, INC.,

      **Defendants.**

## <u>MEMORANDUM OPINION ON FILING RESTRICTIONS</u>

      On January 8, 2014, the Court issued an ORDER TO SHOW CAUSE (Doc. No. 140)

directing Plaintiff Daniel W. Cook, *pro se*, to appear in this Court on January 28, 2014 at 11:00

am and show cause why the filing restrictions proposed in a previous ORDER TO SHOW

CAUSE (Doc. No. 124) should not now be imposed.  At the hearing on January 28, 2014, Mr.

Cook personally appeared, testified under oath, and presented voluminous documentary exhibits.

However, after hearing arguments from the parties and after reviewing the litigation history in

this and other courts, which involved these parties, the Court will impose narrowly tailored filing

restrictions on Plaintiff Daniel W. Cook.  The Court will outline a process that Mr. Cook must

follow before filing any pleadings or documents *pro se* in the United States District Court for the

District of New Mexico.[1]

## I. Background

A business relationship and intellectual property (IP) are at the center of this longstanding

conflict between Mr. Cook and the named defendants.  The IP was owned by a Canadian

corporation, Hydroscope Canada, Inc. (HCAN) f/k/a R.T.I. Pipeline Integrity Technologies, Inc.

In 1996, Mr. Cook formed Hydroscope Inc. USA (HUSA), "for the purpose of purchasing a

license franchise from HCAN for the exclusive sale and operation of Hydroscope® services by

HUSA in the continental United States, such Hydroscope® technology and services being . . .

the condition assessment of buried waterlines." COMPLAINT, Bk. Case No. 04-10774-7nlj,

---

[1] In this ruling, the Court has reviewed the MOTION FOR ORDER TO SHOW CAUSE WHY DANIEL COOK SHOULD NOT BE HELD IN CONTEMPT AND FOR SANCTIONS  (Doc. No. 138); COOK'S VERIFIED OPPOSITION RESPONSE TO WELLS FARGO'S "MOTION FOR ORDER TO SHOW CAUSE WHY DANIEL COOK SHOULD NOT BE HELD IN CONTEMPT AND FOR SANCTIONS" AND DEMAND FOR EVIDENTIARY HEARING SHOULD MOTION NOT BE DISMISSED (Doc. No. 142); VERIFIED SUPPLEMENT TO COOK'S VERIFIED OPPOSITION RESPONSE TO WELLS FARGO'S "MOTION FOR ORDER TO SHOW CAUSE WHY DANIEL COOK SHOULD NOT BE HELD IN CONTEMPT AND FOR SANCTIONS" AND DEMAND FOR EVIDENTIARY HEARING SHOULD MOTION NOT BE DISMISSED (Doc. No. 149); PLAINTIFF'S LEGAL BRIEF FOR JANUARY 28, 2014 HEARING (Doc. No. 156); REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY DANIEL COOK SHOULD NOT BE HELD IN CONTEMPT AND FOR SANCTIONS (Doc. No. 157); and VERIFIED EXPLANATION AND CONTEXT OF PLAINTIFF'S ANSWER TO COURT AT JANUARY 28, 2014 HEARING (Doc. No. 159). The Court carefully considered the arguments submitted in these documents, all exhibits attached thereto, and all exhibits presented at the January 28, 2014 hearing.

Adv. Proc. No. 04-1240-s.[2]  HUSA is a wholly-owned subsidiary of  Hydroscope Group, Inc.

(HGI).[3]  Mr. Cook is the majority shareholder and president of HGI.

In 1999, Scott and Pamela Garrett, as trustees of the Scott and Pamela Garrett Trust (the

Garretts) invested money into and acquired a minority ownership in HGI.  HGI and its

subsidiaries will be referred to collectively as the Hydroscope Entities.

In 1998, HUSA's license along with other property was pledged to Wells Fargo Bank

(Wells Fargo) as security for a loan.  HGI's inventory, equipment, general intangibles, and other

property were also pledged to secure the loan.  The Garretts alleged that when they invested in

HGI in 1999, they were not informed that HGI had pledged this property to secure a loan from

Wells Fargo. Bk. Case No. 04 17704-nlj7; Adv. Proc. 08-1074-nlj (Doc. No. 1) at 2-3.  The

Garretts alleged that Mr. Cook informed them that only HGI's equipment was pledged to Wells

Fargo. *Id.*

In 2001, as part of a settlement agreement between the Garretts, HGI, and Mr. Cook,

HUSA agreed to sublicense the IP to Scott Garrett in exchange for additional funding.  Scott

Garrett, however, required that Wells Fargo execute a non-disturbance agreement, designed to

allow the sublicense despite Wells Fargo's lien on the HUSA license. According to Mr. Cook,

Wells Fargo failed to execute the non-disturbance agreement and caused the additional funding

agreement with Scott Garrett to collapse.

A. New Mexico State Court Consolidated Case and Mr. Cook's Bankruptcy Court
   Litigation.

In 2003, after the 2001 settlement failed, the Garretts filed a shareholder derivative suit

against Mr. Cook in the Second Judicial District Court, Bernalillo County, New Mexico alleging

---

[2] HUSA acquired the IP license through a Licensing Agreement dated November 13, 1996. HUSA purchased a
78.5% interest in HCAN, but eventually, HUSA acquired a 100% ownership interest in HCAN.
[3] Hydroscope Group, Inc. has also operated as Trenchless Infrastructure Technologies, Inc. and Hydroscope
Integrated Technologies, Inc.  HCAN is apparently a subsidiary of HUSA.

Mr. Cook mismanaged HGI and breached his fiduciary duty to the Garretts.  Case No. CV-2003-08008.  In 2004, the Garretts amended the complaint to add claims against Wells Fargo.  Wells Fargo asserted third party claims against the Hydroscope Entities and CBM Group, Inc. (CBM), another corporation owned and controlled by Mr. Cook, for foreclosure of its security interest.

On October 21, 2004, Mr. Cook and his wife filed, *pro se*, a Chapter 11 bankruptcy petition. Bk. Case No. 04-17704-nlj7.  The bankruptcy case will be discussed in detail in part I C.  Since Mr. Cook engaged in litigation activities simultaneously in state court and in bankruptcy court, the Court will describe the litigation activities in both courts when necessary.

In 2005, Mr. Cook, as Chapter 11 debtor-in-possession and on behalf of the Hydroscope Entities, filed in state court a separate suit against Wells Fargo. Case No. CV-2005-09114.  The case was consolidated with Case No. CV-2003-08008 that had been filed in 2003 by the Garretts (the consolidated state case).

In early 2006, the Garretts filed a third amended complaint in the consolidated state case alleging that Mr. Cook had fraudulently conveyed to CBM certain IP, patents, and inventions.

In July 2006, the bankruptcy court granted Wells Fargo's motion to appoint a Chapter 11 Trustee and appointed Linda Bloom as Chapter 11 Trustee of the Cooks' bankruptcy estate.

In December 2006, Wells Fargo filed in the consolidated state case a motion for summary judgment seeking a judgment of foreclosure against HGI, HCAN, HUSA, and CBM.  Wells Fargo also sought dismissal of all claims asserted against it by the Garretts and Mr. Cook.

On October 2, 2007, State District Judge Valerie M. Huling orally granted Wells Fargo's motion for summary judgment; however, Judge Huling postponed entry of a written order to avoid influencing the bankruptcy court's decision on a motion to approve a compromise between the Chapter 11 Trustee, the Garretts, and Wells Fargo.  Judge Huling acknowledged Mr. Cook's

4

allegation that prior to filing bankruptcy, he acquired ownership of HGI's and HUSA's claims. Judge Huling determined that if Mr. Cook acquired those claims pre-petition, the claims were property of the Cooks' bankruptcy estate.  Judge Huling also noted that only the Chapter 11 Trustee or Mr. Cook, with the approval of the Chapter 11 Trustee, could pursue those claims in state court.

On November 16, 2007, Mr. Cook directed William Waggoner, attorney for the Hydroscope Entities, to file in bankruptcy court an adversary proceeding against Trustee Bloom asking (1) for a declaratory judgment that HCAN never assigned its claims to Mr. Cook prior to his filing bankruptcy and (2) for an order requiring the Chapter 11 Trustee to abandon all claims belonging to HGI and HUSA to allow those entities to pursue those claims. Bk. Case No. 04 17704-nlj; Adv. Proc. 07-1165.  Mr. Cook contended that only HGI and its subsidiaries assigned their claims to him pre-bankruptcy, but HCAN did not because HCAN was a subsidiary of HUSA, not HGI.  After the Chapter 11 bankruptcy case was converted to a Chapter 7, on October 15, 2008, the bankruptcy court ordered Mr. Cook to amend the adversary proceeding complaint to name the Chapter 7 Trustee as defendant.  The bankruptcy court also stayed the adversary proceeding to the extent Mr. Cook was seeking a ruling that he owned HGI's and its subsidiaries' claims; and the stay was to be in effect until ownership of the claims was determined in the state court proceeding. *See* ORDER GRANTING MOTION FOR RECONSIDERATION, Adv. Proc. 07-1165 (Doc. No.27).  The adversary proceeding was closed for failure to prosecute on July 29, 2011.

Instead of allowing the state court to determine ownership of HGI's and HUSA's claims against Wells Fargo and Garrett, Mr. Cook, through counsel and also acting *pro se*, made a concerted effort to avoid having the state court decide that issue.  On November 19, 2007, Mr.

5

Cook directed Attorney Waggoner, to file a motion to stay all state court proceedings, which was denied.

On December 20, 2007, Mr. Cook directed Attorney Waggoner to file a second motion to stay the state court proceedings arguing that the actions by Wells Fargo and the Garretts in state court violated the automatic stay in bankruptcy.

On January 18, 2008, Mr. Cook directed Attorney Waggoner to file a motion to reconsider and to vacate Judge Huling's October 2, 2007 oral ruling in favor of Wells Fargo. The January 18, 2008 motion contained a third request for a stay of the state court proceedings, which was denied.

In late 2007 and early 2008, Mr. Cook directed counsel for the Hydroscope Entities to file in bankruptcy court motions for sanctions for violations of the automatic stay.  The bankruptcy court denied these motions in September 2008. *See* Bk. Case No. 04-17704-11s, Doc. Nos. 619, 627, 651 and 696; MEMORANDUM OPINION ON MOTIONS FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (Doc. No. 798) (Bankr. D. N.M. Sept. 15, 2008); and ORDER DENYING THIRD MOTION FOR SANCTIONS (Doc. No. 799) (Bankr. D.N.M. Sept. 15, 2008).

On March 12, 2008, Mr. Cook directed the Hydroscope Entities to file in state court a fourth motion to stay the state court proceedings.  This motion requested a stay to allow the bankruptcy court to rule on the motions for sanctions described above.

On March 20, 2008, the Cooks' Chapter 11 bankruptcy was converted to Chapter 7, and Philip Montoya was appointed Chapter 7 Trustee.

On July 29, 2008, Mr. Cook, *pro se*, filed in state court a motion for an emergency hearing to submit further summary judgment briefing prior to a written order memorializing

6

Judge Huling's October 2, 2007 oral ruling.  Mr. Cook again claimed that prior to filing bankruptcy, he acquired HGI's and HUSA's claims against Wells Fargo and the Garretts and he could assert those claims in opposition to Wells Fargo's motion for summary judgment.  To assert those claims free from interference by the Chapter 7 Trustee, Mr. Cook argued that the Chapter 7 bankruptcy Trustee's Report of No Distribution, filed June 2, 2008 in the bankruptcy case, caused the Hydroscope Entities' claims to revert to him under Bankruptcy Code § 554(a). However, on July 30, 2008, the day after Mr. Cook filed the emergency motion in state court, Trustee Montoya withdrew the Report of No Distribution.  In bankruptcy court, Mr. Cook opposed Trustee Montoya's withdrawal of the Report, but that opposition eventually failed. MEMORANDUM OPINION ON ABANDONMENT Bk. No. 04-17704-nlj7 (Doc. No. 838) (Ap. 15, 2009).  Mr. Cook's argument that Trustee Montoya abandoned the Hydroscope Entities' claims to Mr. Cook failed as well. *Id.*

In response to Mr. Cook's July 29, 2008 emergency motion, Wells Fargo argued that if HGI's and HUSA's claims belonged to Mr. Cook when the Cooks' bankruptcy case was filed, as Mr. Cook contended, Mr. Cook, as a Chapter 7 debtor, had no standing to assert HGI's and HUSA's claims because only Trustee Montoya could pursue them on behalf of the bankruptcy estate and its creditors.

In August 2008, Judge Huling recused from the state court case, and Judge Theodore Baca was assigned to preside over the consolidated state case.  Judge Huling asked the parties to provide a case history to Judge Baca.

On February 2, 2009, Mr. Cook *pro se* filed in state court a motion for declaratory judgment rearguing his position on summary judgment, but Mr. Cook withdrew the motion prior to a ruling.

On February 7, 2009, Mr. Cook *pro se*, on behalf of one or more of the Hydroscope Entities, filed in state court a motion to strike Wells Fargo's summary judgment motion. Mr. Cook also asked the court to strike Wells Fargo's case history provided to Judge Baca at Judge Huling's request.

On February 18, 2009 after a hearing, Judge Baca entered a written order granting Wells Fargo's motion for summary judgment on foreclosure and entered a final judgment in favor of Wells Fargo on its claims against HGI, HCAN, HUSA and CBM. Judge Baca also dismissed with prejudice all claims asserted by the Garretts and Mr. Cook, HGI, and HUSA against Wells Fargo.

The next day February 19, 2009, Mrs. Yolanda Cook, presumably at Mr. Cook's direction, filed an entry of appearance and peremptory excusal of Judge Baca.

On March 2, 2009, Mr. Cook *pro se* filed in state court a pleading on behalf of the Hydroscope Entities purporting to join in all pleadings that Mr. Cook himself might eventually file before April 6, 2009. In essence, this pleading attempted to approve and join in motions not yet filed. Also on March 2, 2009, Mr. Cook *pro se* filed a motion to vacate the judgment in favor of Wells Fargo and for the fifth time requested a stay of the state court proceedings.

On March 4, 2009, Mr. Cook *pro se* filed in state court a motion requesting findings of fact and conclusions of law

On March 9, 2009, Mr. Cook *pro se* filed in state court a motion to reconsider and vacate Judge Baca's order granting summary judgment, and Mr. Cook made his sixth request for a stay of the state court proceedings or, in the alternative, that the state court certify for interlocutory appeal the issue of Mr. Cook's standing to assert the Hydroscope Entities' claims. This motion was denied. Notably, the bankruptcy court had not yet entered its April 15, 2009 ruling on

whether the Chapter 7 Trustee or Mr. Cook "owned" HGI's and HUSA's claims based on the Trustee's Report of No Distribution, which Mr. Cook argued caused all bankruptcy assets to be "abandoned" to him.

On March 13, 2009, Mr. Cook *pro se* filed in state court a petition for a writ of mandamus requesting assignment of a different state court judge and again requesting that Judge Baca's written order of summary judgment be vacated. The petition was denied.

On April 6, 2009, after Wells Fargo filed responses to Mr. Cook's numerous motions; but before the state court could rule, Mr. Cook appealed the state court judgment to the New Mexico Court of Appeals.

On August 11, 2009, Mr. Cook filed in state court a cross complaint asserting claims against the Garretts, Wells Fargo, and certain Wells Fargo employees.  On August 28, 2009, Wells Fargo moved to strike Mr. Cook's cross complaint.

On October 1, 2009, Wells Fargo asked the state court to enjoin Mr. Cook from filing pleadings or other documents in state court without legal counsel or court permission.

On October 14, 2009, Judge Baca granted Wells Fargo's request for a filing injunction. Judge Baca found that Mr. Cook had "engaged in a pattern of litigation activity that [was] abusive and vexatious such that his access to this Court and any other state or local courts should be restricted. . . ."  Mr. Cook was enjoined from filing, "any lawsuits, pleadings, motions, or any other documents in any district in the state of New Mexico without the representation and signature of a licensed attorney . . ., unless he first obtains leave of court."  Judge Baca outlined a procedure by which Mr. Cook could obtain leave of court to file pleadings *pro se*. *See* Reply Case No. 10 CV 1173 JP/KBM (Doc. No. 157) Ex. 2.

Mr. Cook did not appeal Judge Baca's filing injunction; however, on December 14, 2009,

Mr. Cook filed a writ petition with the New Mexico Supreme Court asking for a stay of the filing injunction and asking for a stay of Wells Fargo's foreclosure sale.  In the petition, Mr. Cook contended Judge Baca discriminated against him due to his status as a debtor in bankruptcy and that Judge Baca had violated his substantive and procedural due process rights.  On December 29, 2009, the New Mexico Supreme Court entered an order allowing the foreclosure sale to proceed.  On January 6, 2010, the Supreme Court denied Mr. Cook's petition to stay the filing injunction.

On January 26, 2010, the New Mexico Court of Appeals dismissed Mr. Cook's appeal of the summary judgment in favor of Wells Fargo and remanded the case to state district court to decide Mr. Cook's numerous post-judgment motions, one of which was a motion to dismiss Mr. Cook's 2009 cross complaint.  However, before the scheduled hearing on the motions, Mr. Cook removed the consolidated state case to federal district court. Case No. 10 CV 71 BB/ACT.

B.  The Removed Case No. 10 CV 71 BB/ACT

Mr. Cook removed the consolidated state case on January 27, 2010.  Although Mr. Cook asserted no race discrimination claims in his 2009 state court cross complaint, Mr. Cook removed under the federal court's jurisdiction over "racial inequality claims." Mr. Cook contended that Judge Baca, a Hispanic, had discriminated against him, a Caucasian, through adverse rulings, particularly the filing injunction.  Because Mr. Cook's removal was untimely, on August 11, 2010, United States District Judge Bruce Black remanded the case.  Finding no reasonable basis for removal, Judge Black ordered Mr. Cook to pay attorney's fees and costs incurred by Wells Fargo and the Garretts in the removal.  Judge Black determined that "Mr. Cook's removal had far less to do with obtaining federal jurisdiction than it did with avoiding state-court jurisdiction-specifically the state court's injunction and the impending hearing on the

10

motion to dismiss." MEMORANDUM OPINION (Doc. No. 42) (Aug. 11, 2010) at p. 6. On January 27, 2010, Mr. Cook appealed Judge Black's decision, and on July 14, 2011, the Tenth Circuit Court of Appeals affirmed Judge Black's decision. *See Garrett v. Wells Fargo Bank*, 652 F.3d 1249 (10th Cir. 2011).

C. The Cooks' Bankruptcy Case No. 04-17704-nlj7

As mentioned, Mr. and Mrs. Cook *pro se* filed a Chapter 11 bankruptcy petition on October 21, 2004. On July 19, 2006, the Bankruptcy Court appointed a Chapter 11 Trustee finding that "the lack of progress in moving toward payment of creditors, in reorganizing the [Cooks'] affairs and in administering this chapter 11 case . . . . requires the appointment of a trustee." ORDER APPOINTING TRUSTEE, Case No. 04-17704-nlj (Doc. No. 366) at 3. From that point forward, Mr. Cook made a concerted effort to regain control of the bankruptcy case.

On March 20, 2008, the bankruptcy court converted the case to Chapter 7 and appointed a Chapter 7 Trustee. Bk. Case No. 7-04-17704-nlj (Doc. No. 726). The bankruptcy court found, "[t]he [bankruptcy] case has become a war of attrition among several of the major participants. There is no longer any possibility of a [Chapter 11] plan being filed or confirmed." ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7 CASE, Bk. Case No. 04- 17704-nlj (Doc. No. 726) at 3.

1. Adversary Proceeding 04-1240

The "war of attrition" was evident early on in the bankruptcy case. On December 7, 2004, the Cooks *pro se* initiated a lawsuit, Adv. Proc. 04-1240, against the Garretts, the Garretts' attorneys, and Wells Fargo. The Cooks, individually and as shareholders, claimed that by harming the Hydroscope Entities, the Garretts and Wells Fargo indirectly harmed the Cooks and their bankruptcy estate. United States Bankruptcy Judge James Starzynski recognized that the

11

adversary proceeding was a duplicate of a ". . . state court action against Hydroscope, the Cooks and others" and that the adversary proceeding sought, ". . . an adjudication on the same issues." PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT WELLS FARGO BANK, NA'S MOTION TO ABSTAIN, Adv. Proc. 04-1204-s (Doc. No. 105) at p. 2.  Wells Fargo asked the bankruptcy court to abstain and to allow the state court to adjudicate all claims brought by the parties.  Judge Starzynski recommended abstention to the federal district court. *See, id.*[4]  On October 24, 2005, Case No. 05 mc 00042 JB, was opened as a miscellaneous case in federal district court to decide the abstention matter.

2.  Miscellaneous Case No. 05 mc 00042 JB

On March 19, 2009, United States District Court Judge James O. Browning adopted the bankruptcy court's proposed findings of fact and conclusions of law and ordered the bankruptcy court to abstain from deciding the Cooks' claims in Adv. Proc. 04-1240. *See* ORDER, Case No. 05 mc 00042 (Doc. No. 5).  After Judge Browning's order to abstain, the miscellaneous case should have been closed, but was not.[5]

In July and August 2009, Mr. Cook, *pro se*, continued to file motions for sanctions in the miscellaneous case, Case No. 05 mc 00042 JB (Doc. Nos. 6, 7, 8, 14, and 33).[6]  As he had

---

[4] Because the bankruptcy court had "non-core" jurisdiction over the claims asserted in Adv. Proc. 04-1240, it could not enter final orders on the substantive issues and on the motion to abstain. Thus, the bankruptcy court submitted proposed findings of fact and conclusions of law to the federal district court. After *de novo* review, the district court accepted the bankruptcy court's proposed decision and entered a final order of abstention in the miscellaneous case. *See* Case No. mc 00042 (Doc. No. 5). *See also* 28 U.S.C. §§ 157(c)(1) and (2), 1334(c).

[5] For some unknown reason, Judge Browning's ORDER in Case No. 05 mc 00042 JB (Doc. No. 5) was also not transmitted to the bankruptcy court and was not entered onto the bankruptcy court's Adv. Proc. 04 1240-nlj docket until March 30, 2010.  *See* ORDER, Adv. Proc. 04;1240-nlj (Doc. No. 123).

[6] TRANSFER OF INTEREST SUBSTITUTION, ENTRY OF APPEARANCE and MOTION FOR SANCTIONS AND DAMAGES AGAINST WELLS FARGO BANK, N.A. FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY (Doc. No. 6); TRANSFER OF INTEREST SUBSTITUTION and MOTION FOR SANCTIONS AND DAMAGES AGAINST SCOTT GARRETT, PAMELA GARRETT AND THE GARRETT TRUST FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY (Doc. No. 7); COOK'S AMENDED "TRANSFER OF INTEREST SUBSTITUTION, ENTRY OF APPEARANCE and MOTION FOR SANCTIONS AND DAMAGES AGAINST WELLS FARGO BANK, N.A. FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY" and "NOTICE" (Doc. No. 8); and COOK'S MOTION TO DISMISS ALTERNATIVELY

asserted in state court, Mr. Cook alleged that, prior to bankruptcy, HGI and HUSA transferred to

him all corporate claims against Wells Fargo and the Garretts.  *See, e.g.,* TRANSFER OF

INTEREST SUBSTITUTION, ENTRY OF APPEARANCE and MOTION FOR SANCTIONS

AND DAMAGES AGAINST WELLS FARGO BANK, N.A. FOR WILLFUL VIOLATIONS

OF THE AUTOMATIC STAY, Case No. 05 mc 00042 JB (Doc. No. 6) at p. 4, filed July 17,

2009.

      In the motions for sanctions, Mr. Cook sought monetary damages against Wells Fargo

and the Garretts arguing that their actions in state court violated the automatic stay in his

bankruptcy case.  Mr. Cook also accused Wells Fargo of "attempting to choke the life out of both

the Cooks (they were only successful in doing so to Yolanda Cook)."  Case No. 05 mc 00042

(Doc. No. 6) at 19-20; (Doc. No. 8) at 19.[7]

      Judge Browning determined that, as a threshold matter, he had to address the district

court's subject matter jurisdiction and the effect of the district court's general reference of all

bankruptcy matters to the bankruptcy court. *See* ADMINISTRATIVE ORDER, Misc. No. 84-

0324, DNM LBR Addendum A.[8] Judge Browning recognized that the district court and the

bankruptcy court had co-extensive subject matter jurisdiction to decide the motions for sanctions,

but Judge Browning found ". . . no compelling justification for withdrawing this matter's

previous referral to the Bankruptcy Court."[9]  ORDER, Case No. 05 mc 00042 (Doc. No. 42) at 2

(Dec. 3, 2009).  Consequently, Judge Browning specifically referred the motions for sanctions to

---

STRIKE "WELLS FARGO'S RESPONSE IN OPPOSITION TO COOK'S AMENDED TRANSFER OF
INTEREST SUBSTITUTION, ENTRY OF APPEARANCE and MOTION FOR SANCTIONS FOR WILLFUL
VIOLATION OF AUTOMATIC STAY AND NOTICE AND ENTRY OF ORDERS (Doc. No. 14). *See also*
COOK'S MOTION FOR ADDITIONAL SANCTIONS, THIS TIME UNDER RULE 11 (Doc. No. 33).
[7] Mrs. Yolanda Cook died on May 25, 2009.
[8] "Each district court may provide that any or all cases under title 11 or any proceedings arising under title 11 or
arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. §
157(a).
[9] Bankruptcy courts have core jurisdiction over claims arising under or arising in cases filed under title 11. 28 U.S.C.
§ 157(b)(1) and (2) (listing matters subject to bankruptcy court's core jurisdiction).

the bankruptcy court and did not withdraw the general reference as to Mr. Cook's bankruptcy

case as a whole. *Id.* at 3.  The miscellaneous case was then closed on December 3, 2009.  Mr.

Cook did not appeal this ruling.

       3.  <u>The Bankruptcy Court's April 2011 Ruling on</u> Mr. Cook's Motions for
           Sanctions for Violations of the Automatic Stay

On April 6, 2011, Bankruptcy Judge Starzynski issued a comprehensive

MEMORANDUM OPINION, Bk. No. 04-17704 (Doc. No. 884).  Judge Starzynski noted that he

had previously ruled on the issue more than two years earlier on September 15, 2008.[10]  As he

had before, Judge Starzynski ruled that Mr. Cook, as a Chapter 7 debtor, did not have standing to

pursue monetary sanctions against Wells Fargo and the Garretts for violations of the automatic

stay. *Id.* at 12.  Judge Starzynski carefully explained that only the Chapter 7 Trustee had standing

to pursue these claims for violations of the stay and to distribute any monetary recovery to the

bankruptcy creditors.  *Id.* at 11.[11]

Mr. Cook countered that all claims that were considered assets of his bankruptcy estate

had reverted to Mr. Cook under the Bankruptcy Code as abandoned property of the bankruptcy

estate based on the Trustee's NOTICE OF ABANDONMENT (Doc. No. 844) filed on April 15,

---

[10] On September 15, 2008, Judge Starzynski issued a MEMORANDUM OPINION ON MOTIONS FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (Doc. No. 798) in which he recounted three motions for sanctions and noted that Mr. Cook was the driving force behind the three motions.  All three motions focused on actions taken by Wells Fargo and/or the Garretts in the state court action. In the MEMORANDUM OPINION ON MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (Doc. No. 798), Judge Starzynski concluded, "[t]he only property at stake in the state court foreclosure case belongs to either the Corporate Entities or the estate. The Court therefore concludes that neither the [Cooks] nor the Corporate Entities have standing to challenge actions taken in that case as a violation of the automatic stay." *Id.* at 7.

[11] It should be noted that Wells Fargo moved to lift the bankruptcy automatic stay in February 2008 one year prior to the state court's summary judgment allowing foreclosure.  Even so, Wells Fargo's foreclosure claim was directed only at the property of the Hydroscope Entities, which were not under the protection of the automatic stay. Moreover, the bankruptcy court granted Wells Fargo relief from the stay in April 2008 and annulled the stay with respect to any proceeding that had already taken place or that would take place in the state court.  On this basis, the bankruptcy court determined that Wells Fargo had not violated the bankruptcy stay.  *See* ORDER GRANTING STAY RELIEF AND ADDITIONAL RELIEF CONCERNING ABANDONMENT (Doc. No. 740) (Ap. 21, 2008); ORDER REITERATING, CLARIFYING AND EXPANDING AS NEEDED APRIL 21, 2008 ORDER GRANTING STAY RELIEF AND OTHER RELIEF (Doc. No. 773) (Aug. 5, 2008); and MEMORANDUM OPINION ON MOTIONS FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (Doc. No. 798) (Sept. 15, 2008).

2009. *See* 11 U.S.C. § 554(a). "Property abandoned under § 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010) (citations omitted).

Judge Starzynski explained that the Trustee's NOTICE OF ABANDONMENT (Doc. No. 844) was ineffective under § 554 to abandon property to Mr. Cook because the Trustee did not send out the notice to all creditors as required under Fed. R. Bankr. P. 6007(a). *Id.* at 9-10. In addition, Judge Starzynski noted the bankruptcy case had not been closed, an event that triggers abandonment of all un-administered scheduled property of the bankruptcy estate under § 554(c).[12] More importantly, however, Judge Starzynski explained that after a bankruptcy case is closed, only property listed by a debtor on his bankruptcy schedules is abandoned under § 554(c). Logically, Mr. Cook's claims for violations of the automatic stay were not, and never could have been, scheduled property because those claims arose within the bankruptcy case itself.[13] Judge Starzynski clearly concluded that only the Chapter 7 Trustee could have pursued claims for violations of the automatic stay; therefore, "even at closing, [Mr. Cook] does not obtain this cause of action." *See* MEMORANDUM OPINION (Doc. No. 884) at 10-11 (Bankr. D. N.M. Ap. 6, 2011).

On the merits of Mr. Cook's allegations, Judge Starzynski recounted the numerous "memorandum opinions and orders terminating and annulling the automatic stay" to allow the

---

[12] Under 11 U.S.C. 554(c), ". . . any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of the case is abandoned to the debtor and administered for purposes of section 350 of this title."

[13] Under 11 U.S.C. § 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." Although § 362(k) creates a private cause of action and a private remedy to an "individual injured by any willful violation of a stay," the cause of action may be pursued only by one with legal standing. With respect to violations of the stay directed at a Chapter 7 debtor's property, only the Chapter 7 Trustee has standing to pursue such claims.

consolidated state case to continue. MEMORANDUM OPINION (Doc. No. 884) at 12.[14]  Those

orders clearly conveyed to Mr. Cook, Wells Fargo, and the Garretts that "all parties were free to

pursue anything against anyone in the state court case." *Id.*  Moreover, Judge Starzynski pointed

to previous rulings annulling the automatic stay and validating all actions taken in the state court

case. *Id.* at 12.[15]  Judge Starzynski emphasized that Wells Fargo sought foreclosure of its security

interest on property owned by the Hydroscope Entities, and that property was not protected by

the bankruptcy stay in the Cooks' personal bankruptcy case.  Judge Starzynski noted that Wells

Fargo did not pursue remedies against Mr. and Mrs. Cook based on their personal guarantees of

the Wells Fargo loan. *Id.*  Judge Starzynski further concluded that Wells Fargo did not violate the

bankruptcy stay by defending against Mr. Cook's claims in state court. *Id.*at 14-15.  In sum,

Judge Starzynski clearly ruled that no stay violations occurred in the consolidated state case, and

Judge Starzynski clearly explained that even if violations occurred, Mr. Cook lacked standing to

bring claims related to the perceived violations.  In Judge Starzynski's opinion, Mr. Cook's

pursuit of sanctions against Wells Fargo and the Garretts, "wasted the time of both the parties

and the Courts." *Id.* at 15.  Mr. Cook's subsequent motion for reconsideration was denied. *See*

MEMORANDUM OPINION ON DEBTOR'S AMENDED MOTION TO RECONSIDER

DISMISSAL OF SANCTIONS MOTIONS AGAINST WELLS FARGO AND GARRETT

(Doc. No. 922) (Aug. 9, 2011).

On August 23, 2011, Mr. Cook appealed Judge Starzynski's decision to the Tenth Circuit

Bankruptcy Appellate Panel (BAP).  The BAP affirmed Judge Starzynski's holding that Mr.

Cook lacked standing to assert stay violations.  *Cook v. Wells Fargo Bank, N.A. (In re Cook)*,

Nos. NM-11-082, 04-17704, 2012 WL 1356490, * 4-6 (B.A.P. 10th Cir. Ap. 19, 2012)

---

[14] *See supra* notes 10-11.
[15] *See supra* notes 10-11.

(unpublished opinion).  On further appeal, the Tenth Circuit affirmed. *Cook v. Wells Fargo Bank, N.A. (In re Cook)*, No. 12-2100, 2013 WL 1297590, ** 3-5, 520 Fed. Appx. 697, 702-704 (10th Cir. Ap. 2, 2013) (unpublished opinion).

### 4.  Mr. Cook's Attempt to Reopen His Bankruptcy

On August 21, 2012, a Final Decree was entered in Mr. Cook's eight year-old no asset Chapter 7 bankruptcy case, and the case was closed. FINAL DECREE Bk. No. 04-17704 (Doc. No. 940).  On September 4, 2012, Mr. Cook *pro se* filed a MOTION TO ALTER OR AMEND FINAL DECREE ALTERNATIVELY TO VACATE (Doc 940), REINSTATE AUTOMATIC STAY, WITH RELIEF TO INCLUDE ORDER SPECIFICALLY RETAINING JURISDICTION FOR ALL MATTERS RELATED TO COOKS [sic] BANKRUPTCY TO AFFORD CONSTITUTIONAL RIGHTS GRANTED BY ART. I, SECTION 8, CLAUSE 4 OF THE UNITED STATES CONSTITUTION (Doc. No. 941).  On September 10, 2013, Mr. Cook *pro se* filed an ERRATA, CORRECTION AND SUPPLEMENT TO MOTION TO ALTER OR AMEND FINAL DECREE ALTERNATIVELY TO VACATE (Doc 940), REINSTATE AUTOMATIC STAY, WITH RELIEF TO INCLUDE ORDER SPECIFICALLY RETAINING JURISDICTION FOR ALL MATTERS RELATED TO COOKS [sic] BANKRUPTCY TO AFFORD CONSTITUTIONAL RIGHTS GRANTED BY ART. I, SECTION 8, CLAUSE 4 OF THE UNITED STATES CONSTITUTION (Doc. No 942) (together, Motion to Reopen). [16] Mr. Cook asked the bankruptcy court to set aside the final decree closing his bankruptcy case arguing that "all matters related to the Cooks [sic] Bankruptcy Case No. 04-17704 had not been fully administered." *Id.* at 10.  Both Wells Fargo and the Garretts filed responses (Doc. Nos. 943 and 944).  Feeling confident that the Tenth Circuit would reverse Judge Starzynski's ruling that

---

[16] Bankruptcy cases may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

Mr. Cook lacked standing to assert claims for violations of the stay, Mr. Cook insisted that his bankruptcy case remain open to pursue those claims for stay violations and other causes "that have a supportable value of $5.5 billion." *Id.*

On November 6, 2012, in another comprehensive memorandum opinion, Judge Starzynski denied Mr. Cook's Motion to Reopen. *See* MEMORANDUM OPINION ON DEBTOR DANIEL W. COOK'S MOTION TO ALTER OR AMEND FINAL DECREE, OR ALTERNATIVELY VACATE (FINAL DECREE), REINSTATE AUTOMATIC STAY, AND TO RETAIN JURISDICTION FOR ALL MATTERS RELATED TO THE BANKRUPTCY TO AFFORD CONSTITUTIONAL RIGHTS GRANTED BY ART 1, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION (Doc. No. 949) (Bankr. D. N.M. Nov. 6, 2012).  Judge Starzynski explained that the final decree closing Mr. Cook's bankruptcy case was a ministerial act under the Bankruptcy Code that was triggered by the Trustee's Report of No Distribution that was properly noticed out to creditors under Fed. R. Bankr. P. 6007(a).  *Id.* at p. 7.  Judge Starzynski noted no objections to the Trustee's Report of No Distribution were filed, and "absolutely nothing of any value transpired from the date of the Report of No Distribution (in July 2009) until the case closed [in 2012]." *Id.* at 9-10.

Mr. Cook contended that there were two un-administered assets.  The first purported asset was this ". . . civil rights case [against] Judge Baca, Wells Fargo, the Garretts and others . . . [that] arose post-petition and would not be [bankruptcy] estate property[;]"  *Id.* at 11.[17] Reopening a bankruptcy case to administer non-bankruptcy estate property was nonsensical. *Id.* Second, Mr. Cook sought to "administer" claims for monetary sanctions against Wells Fargo and the Garretts for stay violations.  Judge Starzynski reminded Mr. Cook, "[t]his Court ruled four

---

[17] Mr. Cook refers to this consolidated case, No. 10 CV 1173 JP/KBM, filed in December 2010, six years after Mr. Cook filed bankruptcy.

18

times that there had been no stay violations. Those orders were not appealed.  This Court ruled

that the stay was annulled.  That order was not appealed. The Court ruled that Mr. Cook and his

companies lacked standing to pursue stay violations . . . . That order was appealed and affirmed.

It has been appealed again to the Tenth Circuit and remains pending there.  [Unless] that order is

reversed, Mr. Cook has no standing." *Id.* at 12. [18]

 In response to Mr. Cook's argument that claims for stay violations reverted to him upon

closure of the bankruptcy case, Judge Starzynski reminded Mr. Cook of the court's previous

rulings that claims for violations of the stay and all other claims not scheduled as assets of the

bankruptcy estate, "are not abandoned at the end of the case." *Id.* at 12-15.  Finally, Judge

Starzynski concluded that even if "the Tenth Circuit were to find actions the estate could have

brought, it would not be Mr. Cook that would pursue them. . . . Mr. Cook has no rights under the

Bankruptcy Code to collect any assets from anyone or pay any funds to anyone." *Id.* at 14.  "All

Mr. Cook has demonstrated is a desperate hope that the Tenth Circuit will reverse this Court's

and the Bankruptcy Appellate Panel's opinions that he lacked standing to challenge actions as

being in violation of the automatic stay as to estate property."  *Id.* at 14-15.

 Mr. Cook appealed Judge Starzynski's November 6, 2012 ruling to the BAP, and the

BAP affirmed the decision. *Cook v. Wells Fargo Bank, N.A. (In re Cook)*, 497 B.R. 167, 2013

WL 4067978, * 4-5 (B.A.P. 10th Cir. Aug. 13, 2013) (unpublished opinion).  No further appeal

was taken.

   5.  <u>Adversary Proceeding on Dischargeability—Adv. Proc. 08-1074</u>

 Another example of the bankruptcy "war of attrition" is found in the adversary

proceeding filed by the Garretts.  On June 17, 2008, the Garrets filed an adversary proceeding

---

[18] In *Cook v. Wells Fargo Bank, N.A. (In re Cook)*, 520 Fed. Appx. at 702-704 (unpublished opinion), the Tenth
Circuit on April 2, 2013 affirmed Judge Starzynski's order on standing.

against Mr. Cook, individually and as a director of HGI, for a declaration that all debts owed by Mr. Cook to the Garretts were not dischargeable under 11 U.S.C. § 523(a)(2) (fraud), under § 523(a)(4) (fraud as a fiduciary) and under § 523(a)(6) (willful and malicious injury). Mr. Cook was represented by counsel, Daniel Behles, until Mr. Behles was allowed to withdraw from his representation of Mr. Cook on March 2, 2010. Adv. Proc. 08-1074 (Doc. No. 44).

On May 13, 2011, Mr. Cook *pro se* filed a DEMAND FOR JURY TRIAL ON FACTS and MOTION REQUESTING PARTY DISCLOSURES IN ACCORD WITH FRBP 7026, Adv. Proc. 08-1074 (Doc. No. 74). On July 11, 2011, Mr. Cook *pro se* filed ADDITIONAL BRIEFING ON JURY DEMAND AND FORMAL MOTION FOR WITHDRAWAL OF REFERENCE (Doc. No. 82) arguing that the adversary proceeding seeking to deny Mr. Cook a Chapter 7 discharge of the debts owed to the Garretts should be consolidated with this Case No. 10 CV 1173 JP/KBM.

Mr. Cook's motion for withdrawal of the reference led to the opening of another federal district court case, Case No. 11 CV 00635 LH/ACT. The case was assigned to United States District Judge Leroy Hansen for decision. Case No. 11 CV 00635 LH/ACT. On August 10, 2012, Judge Hansen denied the motion to withdraw the reference because it was untimely.[19] *See* ORDER DENYING REQUEST FOR WITHDRAWAL OF REFERENCE, Case No. 11 CV 00635 LH/ACT (Doc. No. 4) and Adv. Proc. 08-1074 (Doc. No. 92). Judge Hansen disregarded Mr. Cook's argument for consolidation because this Court had dismissed all of Mr. Cook's claims in Case No. 10 CV 1173 JP/KBM. *Id.* Judge Hansen also determined, "Cook's motion [to withdraw the reference] is another example of Cook's voluminous frivolous filings in proceedings before this Court and its bankruptcy division." *Id.* at p. 3.

---

[19] A motion to withdraw the reference must be filed as soon as possible after the moving party is aware of grounds for withdrawal or at the first opportunity after the moving party is aware of grounds for withdrawal. 28 U.S.C. § 157(d); *Davis v. Mahlman (In re Mahlman)*, 149 B.R. 866, 869 (N.D. Ill. 1993).

As is his habit, Mr. Cook *pro se* filed a MOTION TO REOPEN AND RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND 60(b), INCLUDING REQUEST TO DISMISS UNDERLYING COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WITH [sic] RELIEF MAY BE GRANTED. Case No. 11 CV 00635 LH/ACT (Doc. No. 5). Judge Hansen denied Mr. Cook's motion. ORDER DENYING RECONSIDERATION, Case No. 11 CV 00635 LH/ACT (Doc. No. 8).

 6.  Bankruptcy Case Reassigned

After Judge Starzynski's retirement, on August 13, 2012, Mr. Cook's bankruptcy case and the associated adversary proceedings were transferred to Bankruptcy Judge Niles L. Jackson of the Western District of Oklahoma. *See, e.g.,* ORDER TRANFERRING ADVERSARY PROCEEDING, Adv. Proc. 08-1074 (Doc. No. 98).  On September 4, 2012, Mr. Cook *pro se* filed an EMERGENCY MOTION TO STAY VENUE TRANSFER, Adv. Proc. 08-1074 (Doc. No. 102) and a MOTION FOR RECONSIDERATION OF VENUE TRANSFER, Adv. Proc. 08-1074 (Doc. No. 103).  Mr. Cook apparently assumed that the transfer to Judge Jackson meant that all of the bankruptcy proceedings would be conducted in Oklahoma.  After explaining that all proceedings would be conducted in New Mexico as before, Judge Jackson denied both motions. *See* ORDER ON MOTION FOR RECONSIDERATION OF VENUE TRANSFER, Adv. Proc. 08-1074 (Doc. No. 105) and ORDER DENYING MOTION TO STAY VENUE TRANSFER, Adv. Proc. 08-1074 (Doc. No. 106).

In the dischargeability proceeding, Adv. Proc. 08-1074, Judge Jackson entered an ORDER STRIKING JURY DEMAND on August 15, 2012.  Adv. Proc. 08-1074 (Doc. No. 99). On September 4, 2012, Mr. Cook filed a motion to reconsider that order.  *See* MOTION TO RECONSIDER, ALTER OR AMEND ORDER STRIKING JURY DEMAND, AND

RENEWED REQUEST FOR JURY DEMAND, Adv. Proc. 08-1074 (Doc. No. 107 and 108).[20]

Judge Jackson denied that motion. ORDER DENYING MOTION TO RECONSIDER, ALTER

OR AMEND ORDER STRIKING JURY DEMAND, AND RENEWED REQUEST FOR JURY

DEMAND, Adv. Proc. 08-1074 (Doc. No. 113).

On December 10, 2012, the Garretts and Mr. Cook filed a STIPULATION OF

DISMISSAL, Adv. Proc. 08-1074 (Doc. No. 116), and the adversary proceeding was closed.

Mr. Cook's litigation activities in this Case No. 10 CV 1173 JP/KBM are described in

section III. A.

## II. Standard of Review

The right of access to the courts is neither absolute nor unconditional and there is no

constitutional right "to prosecute an action that is frivolous or malicious." *Tripati v. Beaman,* 878

F.2d 351, 353 (10th Cir. 1989).  Federal courts have the authority to protect themselves and

litigants from the negative impact of repetitive, unfounded *pro se* litigation. *Werner v. State of*

*Utah*, 32 F.3d 1446 (10th Cir. 1994); *Olson v. Coleman*, 997 F.2d 726 (10th Cir. 1993).  Under

28 U.S.C. § 1651(a), federal district courts may enjoin litigants who abuse the court system and

harass their opponents. *Tripati*, 878 F.2d at 352.  "There is strong precedent establishing the

inherent power of federal courts to regulate the activities of abusive litigants by imposing

carefully tailored restrictions under the appropriate circumstances."  *Id.* (quoting *Cotner v.*

*Hopkins*, 795 F.2d 900, 902-03 (10th Cir. 1986)).  However, "[l]itigiousness alone will not

support an injunction restricting filing activities." *Id.* at 353 (citing *In re Oliver*, 682 F.2d 443,

446 (3d Cir. 1982)).  Injunctions are proper where the litigant's abusive and lengthy history is set

forth. *Id.*  The filing restrictions, ". . . must not be so burdensome, however, as to deny a litigant

meaningful access to the courts."  *Id.* (quoting *Cotner*); *See Sieverding v. Colo. Bar Assn.*, 469

---

[20] The same motion was docketed as two separate motions by the bankruptcy court.

22

F.3d 1340, 1345 (10th Cir. 2006) (affirming but modifying district court's order imposing filing restrictions).

III. <u>Discussion</u>

A.  <u>Mr. Cook's Civil Rights Proceeding, Case No. 10 CV 1173 JP/KBM</u>

On December 9, 2010, after the state court entered a written order granting summary judgment in favor of Wells Fargo and a filing injunction against Mr. Cook, after the bankruptcy court abstained from deciding Mr. Cook's claims to allow those claims to proceed in state court, and after Judge Black remanded the state court case following Mr. Cook's removal, Mr. Cook filed a 117-page page COMPLAINT (Doc. No. 1) in this Court alleging claims against Judge Baca, Wells Fargo, the Garretts, and their attorneys related to the events and issues litigated in state court and in bankruptcy court. Case  No. 10 CV 1173 JP/KBM.

On January 14, 2011, Mr. Cook filed a FIRST AMENDED COMPLAINT (Doc. No. 11) (First Amended Complaint).  In the First Amended Complaint, Mr. Cook asserted *inter alia* claims that, by their actions in state court and in bankruptcy court, Judge Baca, Wells Fargo, the Garretts, their attorneys, and a Wells Fargo Vice President violated Mr. Cook's federal civil rights, violated federal and state securities law, violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b), (c), (d) (RICO), and committed torts and breaches of contract under state law. *Id.*

Asserting judicial immunity, Judge Baca moved to dismiss the First Amended Complaint, and the motion was granted. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 55) at 5 (stating that judges are entitled to immunity from civil actions based on judicial acts within their jurisdiction).

On January 28, 2011, Wells Fargo, the Garretts, and the other defendants moved to

23

dismiss the First Amended Complaint.  The Court carefully considered Mr. Cook's federal

claims: 1) claims for conspiring with Judge Baca to racially discriminate against Mr. Cook and to

violate Mr. Cook's civil due process rights; 2) claims for violations of the Security and Exchange

Commission's (SEC) Rule 10b-5, 17 CFR § 240b-5; and 3) claims for violations of the RICO

statute.  On July 8, 2011, the Court dismissed with prejudice all of Plaintiff's federal civil rights

claims under Fed. R. Civ. P. 12(b)(6). *See* MEMORANDUM OPINION AND ORDER

DISMISSING COMPLAINT (Doc. No. 94) and FINAL JUDGMENT (Doc. No. 95).

      The Court determined that Mr. Cook failed to support his assertions in Counts I-VI of the

First Amended Complaint that Wells Fargo, the Garretts, and the other defendants conspired

with Judge Baca to discriminate against him on the basis of his Caucasian race; thus, the Court

dismissed those claims with prejudice.  The Court also found that Mr. Cook failed to support the

Count VII claims that Wells Fargo, the Garretts, and the other defendants made fraudulent

statements or misrepresentations in connection with the purchase or sale of securities in violation

of SEC Rule 10b-5, and the Court dismissed those claims with prejudice.  Finally, the Court

dismissed Counts X-XIII because Mr. Cook's claims under RICO failed as a matter of law.

Under 28 U.S.C. § 1367(c)(3), the Court declined to exercise jurisdiction over Mr. Cook's Count

VII-X claims under state law and dismissed those claims without prejudice.[21]

      On August 5, 2011, Mr. Cook filed a motion to reconsider, which the Court denied on

January 12, 2012.  *See* MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S

MOTION TO RE-OPEN AND RECONSIDERATION UNDER Fed. R. Civ. P. 59(e) and 60(b)

(Doc. No. 122).  On September 1, 2011, Mr. Cook also filed a motion for leave to amend his

First Amended Complaint, which the Court denied on January 13, 2012. *See* MEMORANDUM

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

---

[21] Mr. Cook included state securities and state fraud claims in Count VII along with federal securities law claims.

PETITION (Doc. No. 123).

      On February 13, 2012, Mr. Cook appealed the three decisions to the Tenth Circuit.

      On March 7, 2013, the Tenth Circuit affirmed this Court's three decisions, but noted,

      . . . some aspects of [Mr. Cook's] claims . . . are barred by his lack of standing.  He lacks standing to assert claims relative to alleged violations of the automatic stay in bankruptcy, and any other claims that are part of the bankruptcy estate.  The district court should have dismissed these portions of Mr. Cook's claims without prejudice for lack of standing.

*See Cook v. Baca,* No. 12-2023, 512 Fed. Appx. 810, 820-21, 2013 WL 828814 (10th Cir. Mar. 7, 2013) (unpublished opinion).

      In its March 7, 2013 decision, the Tenth Circuit determined that some of Mr. Cook's claims accrued prior to the Cooks' bankruptcy filing and were property of the Cooks' bankruptcy estate.  Those claims alleged that Wells Fargo and the Garretts committed torts, frauds, and breaches of contract in connection with their business relationship and the failure to implement a 2001 settlement agreement. As such, those claims could only be brought by the Chapter 7 Trustee, and Mr. Cook had no standing to assert them in the First Amended Complaint. *Id.* at 812-14.

      The Tenth Circuit also found interwoven into the voluminous First Amended Complaint, allegations that Wells Fargo, the Garretts, and the other defendants, by their actions in state court, violated the automatic stay in the Cooks' bankruptcy and committed bankruptcy fraud. *See, e.g.,* FIRST AMENDED COMPLAINT, Case No. 10 CV 1173 (Doc. No. 11) at ¶¶ 72-84, 219-220 (stay violations); ¶¶ 92-116 (bankruptcy fraud).  The Tenth Circuit ruled that these alleged claims should have been dismissed without prejudice because Mr. Cook lacked standing to bring those claims. *See* 512 Fed. Appx.  at 812-814.  Again, Mr. Cook lacked standing because those claims could only have been brought by the Chapter 7 Trustee.  *Id.*

The Tenth Circuit also determined Mr. Cook asserted a claim that Wells Fargo and the Garretts, by their actions in state court and in concert with the Chapter 11 Trustee and the Chapter 7 Trustee, violated Mr. Cook's federal rights to due process.  According to the Tenth Circuit, these claims "plainly arose after the bankruptcy proceedings were filed." *Id.* at 820.[22] However, the Tenth Circuit affirmed this Court's dismissal of those federal claims with prejudice for failure to state a plausible claim for relief under Rule 12(b)(6). *Id.* at 821-22.

B.  The First Show Cause Order

On August 24, 2011, after the Court's dismissal of Mr. Cook's claims against him, Judge Baca asked the Court to impose a filing injunction against Mr. Cook.  (Doc. No. 100)  On January 13, 2012, the Court issued an ORDER TO SHOW CAUSE (Doc. No. 124) (First Order to Show Cause) requiring Mr. Cook to show cause why filing restrictions should not be imposed on him, and Mr. Cook filed a written response as instructed. On February 6, 2012, the Court declined to impose filing restrictions based on Mr. Cook's promise in his response that "there is absolutely no likelihood he would file any other actions in any federal district court against the parties named in his one and only complaint, . . . unless the Tenth Circuit found the dismissal of his complaint by this Court was err[or]."  *See* RESPONSE TO ORDER TO SHOW CAUSE AND REQUEST FOR EVIDENTIARY HEARING SHOULD ORDER NOT BE DISMISSED (Doc. No. 127); and ORDER (Doc. No. 128).

C.  The Tenth Circuit Remand

As mentioned, on March 7, 2013, the Tenth Circuit issued an ORDER AND JUDGMENT (Case No. 10 CV 1173 Doc. No. 133-1), in which the Tenth Circuit affirmed this Court's dismissal of some of Mr. Cook's claims with prejudice and remanded other claims to this

---

[22] The Tenth Circuit stated, "[s]imply put, Mr. Cook alleges harms to his constitutional rights that he suffered post-bankruptcy, not prior to or contemporaneously with the bankruptcy filing. . . . These claims . . . are not part of the [bankruptcy] estate." *Id.* at 820-21.

Court with instructions to "modify a portion of the dismissal from a dismissal with prejudice to a dismissal without prejudice for lack of subject matter jurisdiction." (*Id.* at 1.)

On  April 25, 2013, Mr. Cook filed a REQUEST FOR HEARING TO DETERMINE THE SCOPE OF TENTH CIRCUIT REMAND AND NOTICE OF COOK'S OWNERSHIP OF ESTATE INTERESTS IN STATE LAW CAUSES, COUNTS VII AND VIII, ARISING IN A TITLE 11, § 1334 JURISDICTION (Doc. No. 134).  On May 1, 2013, the Court entered an ORDER (Doc. No. 135) denying Mr. Cook's request for a hearing.

In the May 1, 2013 ORDER, the Court dismissed without prejudice, "[Mr. Cook's] 'claims relative to alleged violations of the automatic stay in bankruptcy, and any other claims that are part of the bankruptcy estate.'" *See* ORDER (Doc. No. 135) at 2.  The Court reiterated its earlier decision to decline jurisdiction over all of Mr. Cook's "state law causes of action," whether they arose prior to or after Mr. Cook's bankruptcy case was filed. *Id.* By his next action, Mr. Cook demonstrated that he misinterpreted the Court's dismissal on remand.

   D.  Case No. 13 CV 669 JP/KBM

On July 19, 2013, Mr. Cook filed yet another COMPLAINT in this Court against Wells Fargo and the Garretts.  Case No. 13 CV 669 JP/KBM.  In this COMPLAINT, Mr. Cook asserted claims against Wells Fargo and the Garretts described as

> **state law claims** arising in a Title 11 bankruptcy case for which this Honorable Court ("Court") has jurisdiction, **28 U.S.C. § 1334(a),** claims whose ownership were previously disputed by defendants but **now clearly owned by Cook upon the closing of the Cooks [sic] bankruptcy case pursuant to 11 U.S.C. § 554(c)**, for which Plaintiff respectfully requests a trial by jury, **and pursuant to 11 U.S.C. § 362(k) and or § 105** Plaintiff also brings herein **claims against the named defendants for willful violations of the automatic stay**, 11 U.S.C. § 362(a), which claims have a factual nexus with many state law claims raised, . . .

Case No. 13 CV 669 JP/KBM (Doc. No. 1) at 1 (emphasis added).

Mr. Cook attempts to bring "state law claims arising in a Title 11 bankruptcy case," but

the Court can discern no such claims in Mr. Cook's COMPLAINT, Case No. 13 CV 369

JP/KBM.  Claims within the court's "arising in" bankruptcy jurisdiction are claims that would

not exist but for the bankruptcy, and Mr. Cook's state law claims asserted in the COMPLAINT

do not fit within this definition.[23]  *See In re Simmons*, 205 B.R. 834, 837 (Bankr. W.D. Tex.

1997) (concluding that the district court had "arising in" jurisdiction over legal malpractice

claims that involved preparation for bankruptcy and the bankruptcy itself).  Moreover, Mr.

Cook's reference to 28 U.S.C. § 1334(a) is not a basis on which this Court may assert

jurisdiction over any of his state law claims.[24]  Next, Mr. Cook purports to assert "claims whose

ownership were previously disputed by defendants but now clearly owned by Cook upon the

closing of the Cooks [sic] bankruptcy case pursuant to 11 U.S.C. § 554(c)."  If Mr. Cook is

referring to state law claims abandoned when Mr. Cook's bankruptcy case was closed, the Court

has declined jurisdiction over those claims under 28 U.S.C. § 1367(c). If Mr. Cook is referring to

claims for violations of the automatic stay, Mr. Cook has no standing to assert those claims and

has not acquired standing under 11 U.S.C. § 554(c).[25]

On January 8, 2014, the Court reopened Case No. 10 CV 1173 JP/KBM and consolidated

the two cases. *See* ORDER OF CONSOLIDATION Case No. 10 CV 1173 (Doc. No. 139); Case

---

[23] In Counts I-IX, Mr. Cook asserts state law claims in 13 CV 669 JP/KBM: fraud, breach of contract, violations of the New Mexico Unfair Practices Act, tortious interference with contracts, malicious abuse of process, and civil conspiracy. COMPLAINT 13 CV 669 JP/KBM (Doc. No. 1) at pp. 1-77 (Counts I-IX).  These claims are related to the actions of Wells Fargo and the Garretts in the 2001 settlement negotiations and the failure of that settlement. The claims are also related to Wells Fargo's and the Garretts' actions in the consolidated state case.  Some of Mr. Cook's allegations in Counts I-IX appear to be claims related to bankruptcy fraud. Counts X and XI assert claims for violations of the bankruptcy automatic stay. *Id.* at pp. 77-89.

[24] Section 1334 of Title 28 describes the parameters of federal court jurisdiction having to do with bankruptcy matters. *Id.*  Section 1334(a), cited by Mr. Cook, states, "[e]xcept as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11."  Subsection (b) provides, "[n]otwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  In turn, this Court has referred all such civil proceedings to the bankruptcy court in this district.  *See* ADMINISTRATIVE ORDER, DNM LBR Addendum 1 (Mar. 19, 1992).

[25] *See* COMPLAINT, 13 CV 669 JP/KBM (Doc. No. 1) at pp. 77-89 (Counts X and XI).

No. 13 CV 669 (Doc. No. 16).

      E.  The Second Show Cause Order

On motion by Wells Fargo, Case No. 10 CV 1173 JP/KBM (Doc. No. 138), the Court issued another ORDER TO SHOW CAUSE (Doc. No. 140) (Second Order to Show Cause). In the Second Order to Show Cause, the Court required Mr. Cook to appear on January 28, 2014 and show cause why Mr. Cook should not be held in contempt for breaking his promise not to file any other actions in federal district court against these defendants unless the Tenth Circuit found error in this Court's dismissal of Mr. Cook's claims. The Court also ordered Mr. Cook to show cause why the filing restrictions proposed in the Court's First Order to Show Cause should not be imposed in light of Mr. Cook's July 19, 2013 COMPLAINT in Case No. 13 CV 669 JP/KBM.

On January 28, 2014, Mr. Cook appeared *pro se* at the scheduled hearing and was given ample opportunity to testify, to present evidence, and to make legal arguments as to why he should not be held in contempt and why filing restrictions should not be imposed. Mr. Cook's arguments and evidence centered around two primary issues: 1) whether Mr. Cook has standing to raise the claims he now asserts in 13 CV 669 JP/KBM; and 2) whether Mr. Cook's COMPLAINT in 13 CV 669 JP/KBM raises new, never-before-asserted causes of action over which this Court has jurisdiction.

Mr. Cook testified that he did not believe he broke his earlier promise, made after the First Order to Show Cause by filing the COMPLAINT in 13 CV 669 JP/KBM.[26] Mr. Cook

---

[26] Mr. Cook also argues that his statement was not a "promise" within the legal meaning of that word and even if his statement were a promise, it was a promise only to the State defendants, i.e. Judge Baca, and not to this Court. Whether Mr. Cook made a promise to this Court is no longer relevant to this Court's imposition of filing restrictions. The Court's imposition of filing restrictions is based on Mr. Cook's repeated filings of frivolous pleadings asserting claims that have been decided by other courts, claims that Mr. Cook has no standing to assert, or claims over which this Court has declined to exercise jurisdiction under 28 U.S.C. §1367(c)(3).

insisted that the Tenth Circuit's order remanding Case No. 10 CV 1173 JP/KBM and instructing

this Court to dismiss without prejudice certain claims constitute a finding that this Court

committed an "error" under the plain meaning of the term "error." *See* PLAINTIFF'S LEGAL

BRIEF FOR JANUARY 28, 2014 HEARING, Case No. 10 CV 1173 JP/KBM (Doc. No. 156)

Ex. 2.  Mr. Cook reasoned that when the Tenth Circuit remanded with instructions to correct this

"error," he was no longer bound by his statement that he would not file any other pleadings.  Mr.

Cook characterizes his COMPLAINT in Case No. 13 CV 669 JP/KBM as a "continuation

complaint."  According to Mr. Cook, he may continue to prosecute all claims that this Court

dismissed without prejudice on remand. (*Id.* Ex. 1.)  Mr. Cook maintains he has acquired

statutory standing to assert two types of claims against Wells Fargo and the Garretts: 1) claims

for violations of the bankruptcy stay; and 2) state law claims that arose prior to the bankruptcy

filing, which were property of Mr. Cook's bankruptcy estate.  Mr. Cook claims to have acquired

standing to assert both types of claims under 11 U.S.C. § 554(c) through abandonment upon

closure of his bankruptcy case.

 First, Mr. Cook has failed to acquire standing to assert these claims against Wells Fargo,

the Garretts, or any other defendant, for violations of the automatic stay under § 554(c). Judge

Starzynski has held on numerous occasions[27] that, if such claims existed at the closure of Mr.

Cook's bankruptcy case, those claims did not revert to Mr. Cook under § 554(c).  Claims for

violations of the stay could never have been abandoned because they could not have been

property listed by Mr. Cook on his bankruptcy schedules.  In Chapter 7 bankruptcy cases, claims

alleging stay violations against bankruptcy estate property can only be asserted by the Chapter 7

Trustee.  Mr. Cook's proper recourse would be to convince the bankruptcy court to reopen his

bankruptcy case and have the Chapter 7 Trustee pursue those claims.  However, Mr. Cook has

---

[27] *See supra*, pp. 12-17.

tried and failed to reopen his bankruptcy case for that purpose.  *See supra,* pp. 17-19.

More importantly, however, Judge Starzynski has repeatedly ruled that the actions by Wells Fargo, the Garretts, and the other defendants in state court did not violate the bankruptcy stay.  *See supra* pp.15-17.   In short, the COMPLAINT (Case No. 13 CV 669 JP/KBM) restates the long history of this conflict and reasserts claims that Mr. Cook, as a matter of law, cannot assert in this Court because certain claims belong to Mr. Cook's bankruptcy estate, the post-bankruptcy claims for violations of federal constitutional and statutory rights have been dismissed under Rule 12(b)(6), and the Court has declined jurisdiction over all of Mr. Cook's state law claims.

As for state law claims that Mr. Cook contends arose prior to his bankruptcy filing, the Court recognizes that those claims have now been dismissed without prejudice for lack of standing, as the Tenth Circuit instructed.  To the extent those claims arose prior to the Cooks' bankruptcy filing, those claims belonged to the bankruptcy estate, but only until the bankruptcy case was closed.

On their Amended Schedule B (Bk. Case No. 04-17704-nlj7 Doc. No. 216 at 8), the Cooks listed as personal property unnamed and unliquidated state law tort claims against Wells Fargo and the Garretts.  Because they were listed on Schedule B, those claims, if they still existed at the time the bankruptcy case was closed, would have technically reverted to Mr. Cook when his bankruptcy case closed on August 21, 2012.  However, those scheduled state tort claims were dismissed in Judge Baca's February 2009 written order granting summary judgment in favor of Wells Fargo.  Judge Baca ruled, "all claims asserted against Wells Fargo in the Complaint for Damages filed by Daniel and Yolanda Cook, Hydroscope Group, Inc., and Hydroscope, Inc., USA are hereby dismissed with prejudice." MOTION FOR ORDER TO

SHOW CAUSE WHY DANIEL COOK SHOULD NOT BE HELD IN CONTEMPT AND FOR

SANCTIONS (Doc. No. 138) Ex. 1 at p. 11.  Nevertheless, even if Mr. Cook acquired any

existing state law claims by abandonment after his bankruptcy case closed in August 2012, this

Court has properly declined to exercise jurisdiction over those claims under 28 U.S.C. §

1367(c)(3).

At the hearing on January 28, 2014 on the Second Show Cause Order, the Court also

heard from counsel for Wells Fargo, Ms. Ostrye, counsel for the Garretts, Ms. Vargas, and

counsel for Judge Baca, Mr. Sydow, in support of a finding of contempt and an order imposing

filing restrictions on Mr. Cook.  Ms. Ostrye, Ms. Vargas, and Mr. Sydow agree that filing

restrictions are warranted based on Mr. Cook's history of filing multiple pleadings, motions, and

complaints in various courts asserting the same issues already decided in other courts.  They also

assert that without filing restrictions, Mr. Cook will continue to file *pro se* complaints, pleadings,

motions, and documents in this Court and in other courts based on his misinterpretation of the

myriad adverse rulings in federal and state courts.  Mr. Cook's propensity to repeatedly file

claims dismissed by other courts is displayed by Mr. Cook's filing of the COMPLAINT in 13

CV 669 JP/KBM, which he contends was an appropriate assertion or  "continuation" of the

claims dismissed by this Court without prejudice for lack of standing.

F.  Filing Restrictions Will Be Imposed

After considering the arguments, the evidence, the testimony of Mr. Cook, and the

records of this and the numerous other cases involving these parties, the Court finds that Mr.

Cook is an abusive litigant, who has filed voluminous pleadings containing repackaged

allegations and claims already decided by the state court, the bankruptcy court, the federal

district court, the BAP, and the Tenth Circuit.  Mr. Cook's actions display a pattern of filing new

lawsuits through voluminous pleadings rehashing the long history of this conflict and raising frivolous claims related to the same subject matter, despite adverse rulings on those claims in other courts. In this consolidated case, Mr. Cook has asserted claims dismissed without prejudice by this Court for lack of standing, and he has not acquired standing under 11 U.S.C. § 554(c). He has also asserted claims over which this Court either lacks jurisdiction or has declined jurisdiction and claims that this Court dismissed with prejudice under Rule 12(b)(6) as legally unsupportable.

In addition, the Court finds that Mr. Cook broke his promise not to file any other actions in federal district court against the parties named in Case No. 10 CV 1173 JP/KBM unless the Tenth Circuit Court of Appeals found error in this Court's dismissal of Mr. Cook's First Amended Complaint. The Tenth Circuit did not find reversible error. And, although the Tenth Circuit affirmed but remanded the case to this Court to dismiss certain claims without prejudice for lack of standing, Mr. Cook nevertheless initiated another case (No. 13 CV 669 JP/KBM) by filing an 89-page complaint with 62 pages of exhibits asserting the same claims against the same parties. Mr. Cook has repeatedly sued the Garretts and Wells Fargo alleging the same wrongs, repackaged according to the exigencies of the moment. Mr. Cook's actions have caused his opponents to incur significant legal costs in responding to Mr. Cook's filings. If Mr. Cook is not enjoined from filing frivolous pleadings and other documents, it is likely that he will continue to do so resulting in the waste of resources for both the opposing parties and the judiciary. Therefore, the Court finds that carefully tailored filing restrictions are appropriate. *See Sieverding,* 469 F.3d at 1343; *Tripati,* 878 F.2d at 353.

The Court will impose by separate order the following filing restrictions:

1. Mr. Cook, individually, as representative of Yolanda Cook, deceased, as representative of any corporate entity (including Hydroscope Group, Inc. Hydroscope Inc., USA,

Hydroscope Canada, Inc., or CBM Group, Inc.), or as successor in interest to Philip J. Montoya, the Chapter 7 Trustee in Mr. Cook's bankruptcy case (Bk. No. 04-17704-nlj7), is enjoined from filing any pleadings, motions, or other documents against any of the parties named as defendants in Case No. 11 CV 1173 JP/KBM or in Case No. 13 CV 669 JP/KBM in the United States District Court for the District of New Mexico without the signature of an attorney licensed to practice before the Court.

2. Mr. Cook is enjoined from filing any pleadings, motions, or other documents *pro se* in the United States District Court for the District of New Mexico without leave of Court.

3. In seeking leave of Court to file pleadings, motions, or other documents *pro se*, Mr. Cook must submit to the Clerk of Court an affidavit entitled "Application Seeking Leave to File" with an attached copy of the order entered by this Court imposing the filing restrictions. The affidavit must contain the following:

A. a brief description of the legal basis for the relief sought and a certification that the claims or contentions have not been raised or disposed of on the merits by any court.

B. a certification that to the best of Mr. Cook's knowledge, the legal arguments advanced are not frivolous or made in bad faith, are warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, are not imposed for any improper purpose, such as delay, or needless increase in the cost of litigation;

C. a certification that Mr. Cook will comply with all rules of procedure and local rules of the Court; and

D. a certification that the proposed pleading, motion or other document has not been ghost-written by a lawyer.

4. The Clerk of Court will forward any document filed by Mr. Cook to the Chief Magistrate Judge or the Chief Magistrate Judge's designee (the Reviewing Judge) for the United States District Court for the District of New Mexico. The Reviewing Judge will determine

34

whether Mr. Cook has complied with this injunction and whether the document has sufficient merit on its face to justify further consideration by the Court.  If the Reviewing Judge determines that the document has been filed in accordance with the restrictions set forth herein, the matter will proceed in accordance with the rules of civil procedure and the rules of the United States District Court of the District of New Mexico.

_____

SENIOR UNITED STATED DISTRICT JUDGE